No. 4237

Second Circuit

LACY v. LUCKY ET AL.

(April 5, 1932. Opinion and Decree.)
(May 5, 1932. Rehearing Refused.)

Reynolds, Hamiter & Hendrick, of Shreveport, attorneys for plaintiff, appellee.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendants, appellants.

PALMER, J. Plaintiff brings this suit for damages to his automobile and for personal injuries resulting from a collision between his automobile and the automobile of defendant Lucky, which occurred on the Shreveport-Minden highway.

Plaintiff alleges that his car, while being driven in a westerly direction on the said highway, on his right-hand side of the road, in a careful manner, and at a moderate rate of speed, was run into and he was run over by defendant Lucky who was driving his automobile on said highway in an easterly direction, at a high, fast and reckless rate of speed, and on his left-hand side of the road; that the driver of his car, seeing that a head-on collision was inevitable, in an effort to avoid it swerved his car to the left but was hit by the car of defendant Lucky, resulting in damages to his automobile and to his person; that he could not have swerved to the right because there was a deep ditch on that side of the road which would have caused his automobile to turn over had he turned that way.

Plaintiff further alleges that his car was a new Ford coupe and was so badly damaged in the collision that it required repairs which were made at a cost of $363.25; that in the collision he was knocked unconscious from the injuries he received to his head, neck, face, back, pelvis, spinal cord and legs; that for said injuries and for shock and mental suffering and for loss of time and earning capacity, medicine, drugs and doctor's bills, he suffered damages in the sum of $22,500, making a total of $22,863.25, for damages to his car and for personal injuries he received.

Plaintiff makes the Maryland Casualty Company a party to this suit, alleging that defendant carried insurance with them to protect him against loss or damages that might be occasioned by the operation of his car. The casualty company filed an exception of no cause or right of action, which was referred to the merits.

Defendants answered, denying generally plaintiff's allegations of negligence, and averring that at the time of the collision and just prior thereto, plaintiff's car was being driven at a fast and reckless rate of speed; that at a certain point the driver of plaintiff's car suddenly and without warning turned to the (his) left, thereby bringing his car in front of the car of defendant Lucky in such a manner as to render it impossible for him to avoid a collision, and that whatever injuries plaintiff sustained were due entirely to his own fault in not having his car under proper control and in driving at a fast, reckless rate of speed, and in suddenly turning to the left, bringing his car in front of the car of defendant Lucky.

In the alternative, defendants pleaded contributory negligence on the part of plaintiff, barring his right to recover.

On these issues the case was tried, resulting in a judgment for plaintiff against both defendants in solido in the sum of $12,363.25. From that judgment defendants have appealed.

### STATEMENT OF FACTS

The collision on which this suit is based occurred in the daytime, about 12 miles east of the city of Shreveport on what is commonly referred to in this section as the "Shreveport-Minden" highway. Plaintiff was traveling towards Shreveport (westerly direction) in a Ford coupe, which was practically new. He had picked up a lad,

said to be about 18 years of age, and, upon learning that he could drive, turned his car over to him. There is no dispute over the fact that plaintiff's car was being driven on the right side of the road until it swerved to the left just a moment or so before the collision.

Defendant Lucky was traveling towards Minden (easterly direction) in a Dodge coupe. He was doing his own driving. There was parked on the south side of the road (defendant's right) a Model T Ford, with about half the car on the pavement. The collision occurred a short distance west of the parked Ford. After the collision, plaintiff's car was found some few feet west of the point where the collision evidently happened. It was turned around, facing east. The car of defendant Lucky was found near the point of collision, sitting crosswise the road, facing north, with the front end near the center of the road.

Plaintiff contends that defendant Lucky was driving on the wrong side of the road at a rapid rate of speed and that his driver, seeing that Lucky appeared to be coming forward without any intention of turning back to the side of the road on which he was due to travel, in order to try to escape a collision, cut his car to his left, and as he did, defendant swerved his car to plaintiff's left, striking plaintiff's car near the center, causing the damages sued for.

Defendant Lucky contends that he was traveling on the right side of the road at a reasonable rate of speed and that the driver of plaintiff's car, traveling at a rapid rate of speed and apparently losing control of the car, suddenly swerved to his left—defendant's right—thereby bringing his car immediately in front of defendant's car on the south side of the road, making it impossible for defendant to avoid running into plaintiff's car.

## OPINION

As we appreciate the situation on the proposition of liability, there are two principal questions presented for decision. They are:

1. Was defendant Lucky, just prior to the accident, driving his car on the wrong (his left) side of the road, thereby creating a hazardous situation, resulting in a sudden emergency that threatened the safety of plaintiff, making it necessary for him to take some steps to avoid what reasonably appeared to be an impending collision?

2. Confronting the hazard that faced him, if created by defendant, was plaintiff's driver negligent when he swerved to his left in order to try to avoid the collision?

There are other questions that enter, to some extent, into the consideration of this case, such as the speed at which both cars were traveling at the time or just prior to the collision; and if defendant was on the wrong side of the road, was he there through carelessness and indifference, or through necessity?

But the question that transcends all others is the one regarding the side of the road on which defendant Lucky was traveling at the time or just prior to the accident. We shall therefore consider that question first.

Plaintiff did not seem to know anything definite on this point. He was dozing at the time and aroused when his driver began blowing his horn. He then saw two cars in front of him, the parked Ford and the coupe driven by defendant Lucky. Lucky's car, he said, was headed towards his car at an angle across the road, his car having swerved to his left in the meantime.

C. W. Fisher, the driver of plaintiff's car, testified that he was driving on his

right side of the road and that defendant Lucky, after passing a car, continued on the wrong side of the road until the wreck.

J. M. Plummer, who resides in Monroe, saw the collision as he was returning to his home from Shreveport. Defendant Lucky passed him just prior to the accident, and was from 100 to 150 yards ahead of him when the two cars collided. He says Lucky, after passing him, traveled on the left side, going east towards Minden, until he met, or just before he met, plaintiff's car, at which time plaintiff swerved to the south side of the road and about the same time Lucky likewise cut his car towards the south side of the road, whereupon the collision occurred.

Robinson Hilton, colored, who lived at Princeton, near where the accident occurred, after having ridden from Shreveport with another colored man who lives near the point where the accident happened, was standing on the roadside to catch another ride to his home, and saw the accident. He says defendant Lucky was traveling on the (his) left side of the road when the two cars were about to meet, at which time Lacy's car was cut to his left and Lucky, at the same time, cut his car to his right, bringing the two cars together in collision.

The defendant Lucky testified that he was not on the (his) left side of the road, but, on the contrary, was on his right side at the time and that the driver of plaintiff's car suddenly cut his car in front of him in a manner so as to make it impossible for him to avoid the collision.

The parties just named are the only persons who saw the movement of the cars just before they collided. All of them, except defendant Lucky, testified that Lucky was traveling on the wrong side of the road as he approached plaintiff's car.

The trial judge rendered a written opinion in the case. He did not discuss the testimony of each witness individually, but gave a statement of his findings on the facts. That statement is as follows:

"The Court sees no good reason for taking up the testimony of each witness and commenting at length on same, as that is all in the record, but will simply state the Court's findings on the facts, as follows: The Court believes it has been proven by a preponderance of evidence, that the Lacy car was being driven in a careful and prudent manner, on its right hand side of the road and going at a rate of speed not excessive, that the driver, Mr. Fisher, on observing the approaching car being driven by Mr. Lucky, on his wrong or left side of the road, that the driver of the Lacy car blew his horn in warning and continued on his right side of the road until so close to the Lucky car that it seemed a headon collision would result unless one of the cars should swerve, and it appearing to the driver of the Lacy car, that Mr. Lucky was making no attempt to avoid a collision, the Court believes that the driver of the Lacy car did the only reasonable thing that could have been done under the circumstances and swerved to his left to let the Lucky car pass, as there appeared not to be room for him to pass to the right of said car, and that just as the Lacy car swerved to its left, the Lucky car suddenly swerved to its right and struck the Lacy car about midway of its right side, resulting in the collision."

It will be seen that the trial judge found that Lucky was running his car upon the wrong side of the road at the time he was about to meet plaintiff's car. It is our conclusion that the testimony fully warrants that finding.

It will be noted that defendant Lucky emphatically denied he was using his left or the wrong side of the road. There is, therefore, no place for a discussion of his reasons for being upon the wrong side. It often happens that a traveler upon a highway is compelled to cross over to the left

side of the road and travel there for some distance, and he may lawfully plead justification for such an act, but no such situation exists here, since Lucky denies that he used the (his) left side of the road, so, having held that he did, it remains only for us to conclude that he was grossly negligent in so doing and that he thereby created a hazardous situation, resulting in a sudden emergency, justifying plaintiff in employing such methods of escaping injury as were reasonable under the existing circumstances.

This then brings us to a discussion of the question: Confronting the hazard that faced him, if created by defendant, was plaintiff's driver negligent when he swerved to his left in order to try to avoid a collision? Plaintiff was in nowise responsible for the hazardous situation producing the emergency from which his driver sought to escape. It is upon defendant Lucky alone that the responsibility for such a situation rests. He offers no reason whatever for his act of driving on the wrong side of the road. He simply contents himself with a denial of the charge. His negligent acts, therefore, created this emergency and were the proximate cause of plaintiff's injuries.

In the case of Schick v. Jenevein, 145 La. 333, p. 338, 82 So. 360, 362, the Supreme Court of the state of Louisiana said:

"Where one is upon the wrong side of the traveled portion of the road, or has not conceded to the other party whom he has attempted to pass that portion of the highway to which he is entitled, and a collision occurs, the burden is upon him who so violates the rule to show that his act was not the proximate cause of the injury, or that there were justifiable circumstances which excuse his conduct."

True enough, plaintiff's driver saw for some distance that Lucky was traveling upon the wrong side of the road, but he rightly assumed that Lucky would return to the proper side in ample time to meet and pass in safety. So it was not negligence on the part of plaintiff's driver to go on in his travel. This he did until the two cars were about to meet and, suddenly realizing that defendant Lucky was apparently making no effort to get his car back to his proper side and that a head-on collision was imminent if he did not do something to avoid it, he concluded that the best way of escape was to swerve his car to the left, and as he did, Lucky at the same time swerved his car to his right, striking plaintiff's car to the rear of the right front fender, at what appears to have been an angle of about 45 degrees, resulting in damages to both cars and in injuring both plaintiff and defendant. The driver of plaintiff's car escaped injury.

Defendants urge that even if Lucky was driving on the wrong side of the road, plaintiff's driver had a safe way of avoiding a collision by turning farther to his right, bringing his car out upon the shoulder of the road, or, in other words, bringing his car upon that space of the highway not paved, lying alongside the pavement. Even if it had been the duty of plaintiff's driver to seek that particular method of escape, the facts do not sustain the contention that such was a safe way. There was a ditch about two and one-half to three feet deep paralleling the pavement. The shoulders of the road appeared to have been recently built, so, as a result of the unsettled condition of the ground covering this space, there were small ditches or drains running from the pavement to the large ditch that made it hazardous for a car to attempt to run over that space, especially if traveling at a rate of speed of 25 or more miles per hour. But the driver of an automobile, faced with a sudden emergency which he did not create and

for which he is not responsible, is only required to exercise reasonable care governed by the circumstances then confronting him, in determining a method of escape from a threatened danger. He does not have time to deliberate, so even if there is more than one way of escape and that he chooses the most hazardous, he is not guilty of contributory negligence in so doing. In this case, we are of the opinion that the method employed by plaintiff's driver was, under the prevailing circumstances, the 'safest method he had open to him.

Defendants' counsel have ably presented their side of this case. Their argument on the law is both interesting and forceful. They contend that the mere fact that one driving upon the wrong side of the road does not relieve another meeting him, who is driving upon the right side, from exercising due and ordinary care to prevent a collision. We think they state the principle correctly, but disagree with them in their application of the principle to the facts in this case.

Due to the fact that the Louisiana courts have so often passed upon the question, it is not settled in our jurisprudence that a driver of an automobile, upon the right side of a highway, in order to avoid a head-on collision with an approaching car, which is traveling upon the wrong side, may cut his car to the left in an attempt to avoid an accident. This is based upon the principle that the driver of the approaching car, using the wrong side of the road, has thereby created a hazardous situation resulting in an emergency threatening injury to the car traveling upon the right side, from which the driver of that car has a right, if his judgment at that time leads him to do so, to resort to the left turn in an effort to avoid an accident.

The following is a fair statement of the rule adhered to by our own courts:

"An automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence, placed in such a position, might make, even though he did not make the wisest choice." See case note, 27 A. L. R. 1197.

In the case of Goodson v. Schuster's Wholesale Produce Co., Inc., 10 La. App. 489, 120 So. 689, 691, in discussing a case in which the plaintiff had swerved his car to the left to avoid a collision with a car traveling on the wrong side, just as are the facts in the instant case, this court said:

"In this country, there have been established by long-continued customs and usages, certain rules regarding the rights and duties of those operating vehicles on public highways. These rules and regulations are commonly referred to as 'the law of the road.' Under the law of the road, those driving automobiles on public highways, on meeting another vehicle, must, if on the left side or in the center of the road, turn to the right. A failure to do so constitutes negligence unless there are conditions or circumstances which make such move dangerous or impracticable."

In the case just cited (page 490 of 10 La. App., 120 So. 689, 691) the court further said:

"Plaintiff, in leaving his side of the road and attempting to cross over to the left in order to pass the truck on the other side, was not negligent under the circumstances. He acted under an emergency created by defendant and used his best judgment. The sudden emergency and peril did not arise because of his own negligence."

Continuing, the court said:

"It may be argued that plaintiff, having seen the truck at some distance approach-

ing on the wrong side of the road, could and should have turned before he did and thereby averted the collision, or that he should have stopped his automobile on his side of the road. But, as already stated, the appearances were such as to cause a reasonably prudent man to believe that if he stopped the truck would run over him. As to whether he should have turned to the left sooner than he did, it must be said that he had a right to assume that the driver would observe the law and turn to his side of the road."

In the case of Potter v. Glassell, 146 La. 687, page 695, 83 So. 898, 901, the Supreme Court said:

"* * * if circumstances are such as to compel one to go to the left, it is not negligence to do so, but, in the absence of such justifying conditions, the duty of each is to concede to the other his side of the road. He who can, and does not, carries the burden of showing that his fault did not cause the accident. We think that the evidence shows that defendant did not turn to the right until a time when plaintiff had concluded that this would not be done; that there was not reasonably a sufficient space for plaintiff to pass with entire safety on the west; and that both started to turn to the east about the same moment, with the result that a collision occurred.

"Hence, a case of negligence is made out against the defendant, contributing proximately to the accident, and he is therefore liable for the damages occasioned."

On the question of the claim of defendant that plaintiff should have cut to the right and passed him on that space of ground between the pavement and the ditch, called the shoulder of the road, as we have already shown, the testimony in this case discloses that such could not have been done in safety, due to the deep ditch paralleling the pavement, and other conditions of the space between the ditch and the pavement, such as drains or ditches running crosswise from the pavement to the large ditch. But, even if it had been a better way than the way resorted to by the driver of plaintiff's car, the choice made by plaintiff's driver could not be charged against him as negligence.

In the case of Martin v. Cazedessus, 15 La. App. 100, page 103, 130 So. 129, 132, in discussing a similar question, the Court of Appeal of the First Circuit, said:

"The only other possibility of his avoiding the collision (and it seems that it would have been as much a probability as the course he followed) was for him to bring his car to a short stop in as near a distance as he possibly could. Granting that that would have been a better way to avert the accident, his choice of the other cannot be charged against him as negligence. Under the circumstances he was placed, a person is not held to the exercise of the same presence of mind and deliberate judgment as one who apprehends the danger and has sufficient time to avoid it."

In the case of Willis v. Standard Oil Company of Louisiana, 17 La. App. 217, 135 So. 777, on page 780, the Court of Appeal for the First Circuit of Louisiana, in considering a case involving questions similar to those in this case, said:

"In an emergency thus created by defendant's driver, plaintiff's driver had the right to swerve from the right of the street to the left if there appeared reasonable prospect of avoiding a collision by so doing. The fact that the turn to the left failed to avert a collision did not relieve defendant's driver from having been responsible for the collision, the sudden emergency having been produced by his fault."

We might go on much more at length quoting decisions of the Louisiana Courts of Appeal and of the Louisiana Supreme Court dealing with cases such as we now have under consideration, but, as stated above, the right of a driver to turn to the left in an effort to avoid a threatened head-on collision with an approaching car,

traveling upon the wrong side of the road, is too well fixed and recognized in the jurisprudence of our state to admit of serious argument, especially when the emergency the driver turning to the left is seeking to avoid was not created by him.

It is our opinion the facts in this case clearly show a case of liability on the part of defendant Lucky.

## ON THE EXCEPTION OF NO CAUSE OF ACTION FILED BY THE MARYLAND CASUALTY COMPANY

As we have previously stated, the exception of no cause or right of action filed on behalf of the Maryland Casualty Company was referred to the merits. During the trial, the rights of exceptor were preserved by timely objections to the testimony offered by plaintiff bearing upon the question of the insurance carried by the defendant Lucky with said company.

Plaintiff seeks to hold the Maryland Casualty Company liable in solido with the defendant Lucky, under the provisions of Act No. 253 of 1918, as amended by Act No. 55 of 1930. As a basis for his action against the insurance company, plaintiff makes the following allegations:

"That the Maryland Casualty Company had furnished the said George J. Lucky insurance on his automobile, which was in force at the time of this accident on the car which was in this wreck, protecting him against loss or damages that might be caused by the operation of said car, and is indebted, with said George J. Lucky in solido to your petitioner in the full sum above named and that amicable demand has been made in vain on both parties."

This exception is based on the fact that the petition contains no allegations to the effect that the alleged insurance, though issued to the defendant Lucky, also inures to the benefit of plaintiff, or in other words, that the insurance was obtained, not only for Lucky's protection, but also for the protection of plaintiff (and any other interested third parties), against any loss or damage he or they might sustain by Lucky's operation of his automobile.

It will be noted that plaintiff did not describe the character of insurance Lucky may have had with said company, under which he claims protection for the recovery of such damages as he may be entitled to in this suit. The allegations stopped with the averments that Lucky only was protected against such loss or damages that might be caused by the operation of his car. No allegation is made that plaintiff, or any third party, has any protection whatever under said insurance.

Plaintiff, having failed to make adequate allegations that under the insurance policy which Lucky is alleged to have, said company is bound unto him directly for the damages he sustained as a result of the said collision, has failed to disclose a cause of action against said company; therefore, the lower court improperly held said company liable in solido with Lucky. The exception of no right of action was properly overruled.

## QUANTUM OF DAMAGE

The only medical testimony that was presented by plaintiff was that of Dr. H. P. Clemmar, an interne at the Charity Hospital in the city of Shreveport, at the time plaintiff was carried there immediately following the collision. All Dr. Clemmar found wrong with plaintiff was that he had contusions on the upper lip and on the back. At that time he was semi-conscious, but, while there for a period of about thirty minutes, partly regained consciousness. All Dr. Clemmar did was to clean his wounds and put on dressings and strap his chest. He said that plaintiff was at the time suffering with pains in his back; that he was not injured at any other place; said he

carefully examined him and found no injury to his head.

When plaintiff left the hospital, he was requested by Dr. Clemmar to return if any new development occurred. He never came back to the hospital, but the witness saw him again a few days before the trial, which was several months later. At that time he saw nothing wrong with him as a result of the injuries he received in this collision.

Dr. T. J. Fleming, being placed upon the stand by defendants, testified that just a few days before the trial he gave plaintiff a thorough examination and found that he had suffered no permanent injuries from the collision in question. He said plaintiff claimed to be suffering from pain on the left side of the neck, but he said that pain was caused by a tumor in that side of the neck, which had produced an enlargement, and with which plaintiff told him he had suffered for some five or six years; said he examined his back and found nothing wrong with it; that he started his examination at his head and found no abnormality, except the tumor in the neck, until he came to his hip, which trouble, plaintiff admitted, was the result of an injury he had received in an automobile accident in October, 1928. In other words, the substance of Dr. Fleming's testimony is that plaintiff has no permanent injuries as a result of the collision on which he bases his claim for damages in this suit.

.Plaintiff contended that at the time of the trial he still suffered from the injuries received in the collision and was not able to do the same amount of heavy work he performed before the injury. We believe the following statement, which he made as a witness in his own behalf, about describes his condition at the time of the trial, from his own viewpoint:

"I cannot tell that is anything wrong with my back now, the only thing wrong with me now is strength in my neck and arms, I cannot raise up like I should, I don't feel good in any position, and I don't have the strength now that I had."

If this be a correct description of his condition at that time, it would seem certain a little later he would feel no evil effects from his said injuries. While plaintiff had the right to try his case in his own way, yet he could have helped the situation greatly if he had produced medical experts to show the permanency of his, injuries. Not having done so, and especially in the light of what he said, as well as what Drs. Clemmar and Fleming said, we have no hesitancy in saying no permanent injury was shown.

We are satisfied plaintiff suffered considerable pain from the injuries he did receive, but that suffering evidently passed when he recovered from those injuries. According to his own testimony, he was only confined to his bed for a few days. He stated that he did not get better until he had some teeth extracted, whereupon he began to improve. Dr. Fleming stated that he was suffering with a severe case of pyorrhea, of long standing. This would indicate that much of his suffering was due to the condition of his teeth which existed long prior to the accident.

Plaintiff was engaged in the business of selling clothes and carried a sample case. He claims that after the injury he was unable to continue to handle the large case he previously carried and therefore returned it to the company, afterwards using only a small one.

After a few days' confinement at home, plaintiff personally drove his car to Monroe to resume his work, but found that he was unable to work. He says he was confined to his bed at Monroe for about a week and then drove on down to Ferriday

where he was again confined to his bed for twelve or thirteen days. His contention is that he did not go to work regularly until January 20, 1931, after his injury on the 21st of October.

Having held this to be a case of liability, there can be no doubt that defendant Lucky must compensate plaintiff for the actual amount he spent, or contracted to spend, for repairs to his automobile. In other words, plaintiff should recover for physical pain and suffering and for loss of time and for damages to his automobile. In our opinion, the amount of damages awarded by the trial judge is excessive.

We think that for his physical pain and suffering, an award of $2,500 is reasonable. He claims he was earning from two to three hundred dollars per month. After three months, he went back to work regularly. In the meanwhile he worked only a portion of the time. We conclude, therefore, that he should be awarded damages for loss of time in the sum of $600. The actual damage to his automobile amounted to $363.25. These various items total the sum of $3,463.25, which is the amount of damages we think plaintiff should recover.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court against defendant, George J. Lucky, be and is hereby amended by reducing the amount of the award from $12,363.25 to $3,463.25; and as thus amended, it is affirmed, plaintiff to pay the cost of appeal.

It is further ordered, adjudged, and decreed that the judgment of the lower court against defendant Maryland Casualty Company, be and is hereby set aside and avoided, the exception of no right of action is overruled and the exception of no cause of action is sustained and the suit dismissed, at plaintiff's cost, with full reservation of all plaintiff's right against said company, under the alleged insurance of defendant Lucky with said company.