## TUCK v. HARMON et al.
### No. 4549.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1934.

Thompson & Thompson, of Monroe, for appellants.

Lester & Harper, of Monroe, for appellee.

MILLS, Judge.

On May 1, 1932, in the city of Monroe, La., an automobile owned by Robert G. Harmon, in which his wife was driving alone, collided with the car owned and driven by H. D. Tuck, under such circumstances that the issue of negligence on the part of Mrs. Harmon is not contested. This action is brought by Mrs. Ida Belle Tuck, wife of H. D. Tuck, who was riding on the front seat beside her husband at the time of the accident. The force of the collision threw her forward so that her knees struck the instrument board with such violence as to cause a sacroiliac sprain. The only questions presented then are the liability of the different defendants—the suit being brought against Mr. and Mrs. Harmon and their insurer, the Commercial Standard Insurance Company, of Dallas, Tex.—and the quantum of damages.

In the lower court there was judgment in favor of plaintiff against the three defendants, in solido, for $5,000, the amount covered by the insurance policy, and for an additional amount of $1,500 against Robert G. Harmon and wife, in solido—an allowance in all of $6,500. From this judgment all of the defendants have appealed and plaintiff has answered the appeal praying that the judgment be increased to $15,500, the amount prayed for.

Before answering to the merits, all defendants filed an exception of no cause or right of action. As to Robert G. Harmon,

804

the allegations of the petition are: "That said automobile was maintained and used by said Robert· G. Harmon for the pleasure and convenience of himself and family; that Mrs. Harmon was authorized by her husband, Robert G. Harmon, to use said car as and when she desired." The mere granting of authority to use a car as and when desired does not constitute the grantee the agent of the grantor. Were it otherwise, the owner would be liable for the acts of any one to whom he had loaned his car.

■ What is known as the "family purpose" doctrine has no application in this state. Globe. Indemnity Co: v. Quesenberry et ux., 1 La. App. 364; Davis v. Shaw (La. App.) 142 So. 301.

■ Article 9 of the petition alleges further: "That on the evening of the accident, Mrs. Harmon was on a trip or mission for her husband, and was, therefore, acting in the capacity of agent for her ·said husband, Robert G. Harmon." There being no allegations of fact in the petition to support these conclusions, no cause of action is stated. State v. Hackley, Hume & Joyce, 124 La. 854, 50 So. 772.

The exception as to Robert G. Harmon should have been sustained. It was correctly overruled as to Mrs. Harmon.

■ Nor could Harmon be held on the merits. At the time of the accident he was away from home. Friends of his driving to Monroe met with trouble and phoned the Harmon home to ask that he drive out and bring them in. Mrs. Harmon received the message and, .without communicating with her husband, responded to the call. The collision occurred while she was returning home in the family car after completing this mission. There is no question as to the liability of Mrs. Harmon, under article 2315 of the Civil Code, for the damage caused by her fault. However, there is no provision in the Code making the husband, because of the marital relationship, liable for the torts of his wife. To render him so liable, where he is not present, it must be shown that the wife was acting as his agent, or was using the car for the purposes of the community. Durel v. Flach, 1 La. App. 758; McClure v. McMartin, 104 La. 496, 29 So. 227.

There is no evidence to show that Harmon had given his wife any general instructions or authority to go out and bring in his distressed friends. He could not have done so in regard to the particular trip, of which he had no knowledge. He has never in any way ratified the action of his wife or made it his own. The trip was not in any way a community affair. The wife, who did not take the stand, may have correctly assumed that, if her husband had been present, he would have himself gone, but this, so far as the evidence shows, was merely an assumption and

could not constitute agency. If the wife was the agent of any one, it was of the friends to whose call she responded gratuitously, in. the same way that a public garage would have done for hire. She acted on her own initiative.

■ As to the defendant insurer, the allegations of article 8 of the petition are: "That said Hudson sedan automobile was covered by a policy of public liability insurance, issued by the Commercial Standard Insurance Company, of ·Dallas, Texas, insuring Mr. Robert G. Harmon or any adult member of his household, against loss on account of injury to any person caused by the operation of said automobile." The exception as to the insurer is aimed at the failure of the petition to contain any allegation that under its terms the policy was for the protection of or inured to the benefit of injured third parties. In Lacy v. Lucky, 19 La. App. 743, 140 So. 857, the court held that, without such allegation, no cause of action is stated against the insurance company sued jointly with its insured by a third person who has suffered injury by the operation of the car covered by the policy.

Act No. 55 of 1930, § 2, amending Act No. 253 of 1918, § 1, reads in part, " * * * Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought either against the insurer company alone or against both the assured and the insurer company, jointly and in solido."

In Rossville Commercial Alcohol Corp. v. Dennis Sheen. Transfer Co., 18 La. App. 725, 138 So. 183, 188, we find the following: "We feel that the purpose of both statutes was to guarantee to an injured party his right to recover from the insurer of a person liable to him."

Again: " * * * Both, as we have said, have for their object the protection of the right of an injured party to recover from the insurer of the party at fault."

If the policy contained a stipulation that it was for the protection of third persons and inured to their benefit when injured by the assured, there would be no occasion for the act. The right to sue the insurer direct would then result from the contract itself, and not by the operation of law. While the policy in this case is not attached to the petition nor filed in evidence, owing to the failure of plaintiff to procure its production on a subpœna duces tecum directed to Robert G. Harmon, it is probable that it contains no such stipulation. Containing none, necessarily the petition could not truthfully contain any allegation that it did. If the decision

in Lacy v. Lucky is correct, insurance companies can defeat the purpose of Act No. 55 of 1930, by simply omitting from their policies any stipulation in favor of third persons.

In Rambin v. Southern Sales Co. (La. App.) 145 So. 46, 49, it is held that the words within "the terms and limits of the policy" do not include any terms inconsistent with the act; that "the direct right of action is plainly granted by the simple wording of the act." Baden v. Globe Indemnity Co. (La. App.) 146 So. 784, follows the Rambin Case. The right granted under Act No. 55 of 1930 was procedural and not substantive. Gager v. Teche Transfer Co. (La. App.) 143 So. 52.

We think then that the Lacy v. Lucky Case is overruled by the later decision in Rambin v. Southern Sales Company, decided by the same court, and that the exception of no cause or right of action as to the insurance company was correctly overruled.

■ D. M. Doughty, local agent for the insurance company, testified as to the issuance of the policy, and that it was what is called a public liability and public damage policy with a $5,000 limit as to one person; that it had the omnibus or extended coverage clause covering loss by·reason of accident of any adult member of Mr. Harmon's family. In view of Harmon's testimony that the policy had been lost or destroyed, this parol testimony was clearly admissible and establishes the fact that Mrs. Harmon was insured against loss by it. The right of direct action against the insurer being granted plaintiff by Act 55 of 1930, Mrs. Harmon and the insurance company are liable in solido for whatever damages Mrs. Tuck has alleged and proved that she sustained by reason of the collision, which is the basis of this suit.

■ Mrs. Tuck's knees struck the instrument board of the car with such force that her back was severely injured. In addition to this, she suffered minor bruises and abrasions and a small scalp wound. She was taken to a local sanitarium and after examination sent home, where she remained in bed for a period of about five weeks. After that and up to the time of the trial, she was up and down, but unable to attend to any of her household duties or to care for her eight year old adopted child. After the accident, she suffered severe pains in the region of the back, thighs, and abdomen. She is extremely nervous and, due to the pain and nervousness, has, in the seven months elapsing between the time of the accident and that of trial, declined in weight from 170 to 130 pounds. At the time of trial, she was 37 years of age. Three physicians appearing for plaintiff say that she is suffering from sacro-iliac sprain and neurosis. They see no evidences of pain when she is in a normal position, but testify that, when bending or moving, she appears to suffer considerably; that

any pressure in the region of the small of her back appears to cause considerable pain. None of these experts will say that her condition is permanent. One says that he sees no reason why it should be permanent. Another says that he thinks it is. Considering all of this testimony, we find that neither the permanency nor the duration of her disability is proven with certainty. Her trouble may be permanent or it may clear up in a year. Its duration is entirely problematical. Her nervous condition showed no improvement at the time of trial. At that time there was some rigidity in the back which prevented her from bending forward so that she could pick up objects from the floor, or sidewise, without extreme pain.

Defendants offer only one witness in the case, a physician, who finds that the plaintiff complains of the subjective symptoms described above, but that he can find no physical reason for them.

We are satisfied, as was the trial judge, that plaintiff is suffering from sacroiliac sprain and extreme nervousness and that her condition is serious, but not necessarily permanent. There is nothing from which we can determine her period of disability. In this case, we can not, as in those arising under the Workmen's Compensation Act (Act No. 20 of 1914, as amended), allow compensation during a period of disability, but must adopt an arbitrary award. The injuries in this case are strikingly similar to those suffered by Mrs. Rambin in the case of Rambin v. Southern Sales Co., supra. In that case, on the question of Mrs. Rambin's injuries, which were received in a like accident, Dr. George Quinn says that when he first saw her in the sanitarium she was on a stretcher and in intense pain; that she had bruises, contusions, and soreness generalized over her body; that she had two teeth knocked out; that she had a large bruised spot over. the side of her chest; that she had a split in her left hand between her index and her middle fingers, extending down to the palm of her hand, about one or one and one-third inches in length; that most of her pain appeared to be from her back injury and in the upper part of her back and chest. He was asked: "What diagnosis would you make of her condition?"

He answered: "Sacro-iliac sprain and generalized bruises, lacerated wound on her left hand, and also a fracture or breaking out of a couple of teeth she had there."

The court found from all of the evidence that: "As to Mrs. Rambin, at the time of the trial, which was fully seven months after her injuries, she was still confined to her bed and only able to sit up a few minutes at a time at intervals. It is estimated, however, by Dr. Gorton that after about six or eight months more she would, or should, be recovered. However, as his testimony shows, he

merely expressed it as 'probable' that she would be able to do her usual household duties after six or eight months more. All the testimony shows that both plaintiffs suffered and are still suffering considerable physical pain, and which conditions are likely to continue for some time to come, more especially in the case of Mrs. Rambin."

In that case, Mrs. Rambin was allowed $3,000. The only difference between her injuries and those suffered by plaintiff in the present action is in the degree of Mrs. Tuck's nervous condition. From the testimony, it appears that this condition is very much more aggravated than in the case of Mrs. Rambin. We therefore conclude that she is entitled to more compensation than the former. Our best judgment is that the recovery in this case should be in the sum of $4,000.

For the reasons above assigned, the judgment appealed from is reversed as to Robert G. Harmon. The exception of no cause or right of action filed by him is sustained and plaintiff's demand as to him dismissed. The judgment as to Mrs. Robert G. Harmon and Commercial Standard Insurance Company, of Dallas, Tex., is amended by reducing the amount allowed to $4,000, and, as amended, is affirmed; plaintiff to pay the cost of appeal.