### CHITWOOD et ux. v. KING et al. *
#### No. 1339.

Court of Appeal of Louisiana.  First Circuit.
June 11, 1934.

Hawthorn, Stafford & Pitts, of Alexandria, for appellants.

Woosley & Cavanaugh, of Leesville, for appellees.

MOUTON, Judge.

This suit is brought by Milton D. Chitwood and his wife, Frances Chitwood, against Jean M. King, his wife, Ruth King, and the Maryland Casualty Company, in solido.

Mr. Milton D. Chitwood is asking judgment for $817, for damage to his auto and for other items; and his wife is claiming damages in the sum of $2,100 for personal injuries suffered in the overturning of an auto her husband was driving in a near col-

lision with a car Mrs. Ruth King was driving.

An appeal was taken by the three defendants from a judgment rendered against them in the sum of $517 with legal interest from November 11, 1932, in favor of Mr. Milton D. Chitwood, and for $2,100, with legal interest from said date, in favor of his wife, Mrs. Frances Chitwood.

This case must be decided under rule 9 of section 3, Act No. 21 of 1932, p. 162.

Rule 9 is as follows: "The driver of any vehicle on the public roads, highways and bridges of this State shall ascertain, before turning around upon any such road, highway or bridge, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly or unnecessarily delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless and until the said way is clear."

Mrs. Ruth King, on November 11, 1932, while traveling on the highway known as the Old Spanish Trail, westward from Lake Charles, at a point about three or four miles west of Sulphur, entered a side gravelled road connected with the highway from the north, with the intention to back her auto on the highway for the purpose of turning around eastward, towards Lake Charles. Mrs. King entered into this side gravelled road, but does not remember how far she "nosed in" before backing her auto in the highway for the purpose, above stated. Mrs. King says, when she started to go into this side road, that she first saw plaintiff's car coming eastward on the highway, and therefore in the direction of the place where she intended to turn the auto towards the east. When she saw plaintiff's auto, it was then, she says, near the guard rails of the highway, shown by a plat in the record, distant by 755 feet from where the side gravelled road connects with the highway. She testifies that before she started to "back out in the Highway" she looked to her left or westward. Her statement is that before she started to back she looked to her left, but she does not say that, as she was backing towards the highway, after she had started on into it, she looked westward.

The following question was then asked her: "Q. Now, after you backed out in the highway and had stopped your car, did you look any more to your left, or west of that point? A. No, I didn't look because I thought I had time to make it around."

After she had stopped her car to make the turn in the highway, as she did not look westward, it is evident that she did not see plaintiff's car as it was advancing towards her. She saw plaintiff's car only when it was near the guard rails, as before stated, because she testifies she "saw it the second time when she heard the crash and it was then in the ditch."

Rule 9 of Act No. 21 of 1932, § 3, hereinabove copied says: "The driver of any vehicle on the public roads, highways * * * shall ascertain, before turning around upon any such road, highway, * * * that there is no traffic * * * approaching from either direction which will be unduly or unnecessarily delayed and shall yield right-of-way * * * and shall not attempt to make a turn unless and until the said way is clear."

Mrs. King had been driving on the north side of the highway when she entered the side road which ran into the highway from the north. As she was in the driver's seat, she was on the left or west side of her auto. From the position she occupied, by a mere glance to her left or west side, she could not have failed to see plaintiff's car coming eastward. The highway is 100 feet wide, and no doubt she could have stopped on the highway and could have remained at a standstill for the safe passage of plaintiff's auto. It is true that she stopped her car and left ample room for plaintiff to pass on the south side of the highway in the direction he was traveling. The trouble is that she did not remain at a standstill, where she had stopped, but, as she was not looking to her left or west after she had stopped, she did not see plaintiff's on-coming car, and, in her attempt to start eastward after making the turn, some way or other, she placed her car in the pathway of the plaintiff, forcing him either to run into Mrs. King's auto, to run against a post, which was ahead of him, or into a ditch along the roadside.

The testimony of Mr. Chitwood, plaintiff, is, on this subject, rather than to collide with Mrs. King's auto, or the post or rails ahead of him, he rolled over into the ditch, from which resulted the damages to his auto and the personal injuries to Mrs. Chitwood.

The foregoing statement is supported by the testimony of Mr. Chitwood, to which we will now refer.

He says, when he first saw Mrs. King's car, it was on the highway about 100 or 150 feet ahead of his car. Mrs. King's car, after it got on the highway, stopped and had come to a standstill, and that there was ample

room for him to pass safely behind her car, had it remained in the position it was when he got near it.

Mrs. King admits that there was sufficient room for the passage of the Chitwood car. Instead of remaining where her car had come to a standstill, Mrs. King, by a backward or other movement, blocked the passageway on the south side of the road over which Mr. Chitwood would have passed alongside of the other car. The closing of this passage by Mrs. King forced Mr. Chitwood to take the ditch rather than to run into Mrs. King's car, or against a guard rail or post, as before explained.

When Mr. Chitwood first saw the King car, he was traveling at about 35 miles an hour. His testimony is that, when he saw the other car standing still, he checked his speed, and, as he approached nearer, he slowed down to about 4 or 5 miles an hour; that, when he got at about 10 feet or at approximately that distance from the King car, as it was still standing still, he concluded to accelerate his speed to pass on the side of the other car where there was ample room, but at that moment Mrs. King blocked his way; that he then applied his brakes and took to the ditch for the reasons above given.

Under rule 9 of the statute above cited, Mr. Chitwood, unquestionably, had the right of way over this space of the highway alongside of the King's auto. Not only under that rule, but according to all the statutes regulating traffic on the public highways, Mr. Chitwood was clearly entitled to the passage of his car where ample room was provided for by the position of the King car. As he clearly had that right of way, the duty of Mrs. King, under the circumstances, was to respect that right. Mr. Chitwood had the right to think that she would leave the way open for his passage, and could not possibly conclude otherwise; hence, he was not at fault in speeding his car to negotiate the passage.

In blocking the way, Mrs. King was clearly at fault and guilty of inexcusable negligence.

Counsel for defendant argue that Mr. Chitwood cannot claim that he was faced with any sudden emergency on the occasion in question. This is reasoned out on the theory that plaintiff had seen the King car 100 or 150 feet ahead of him and could have stopped his auto in time.

Taking that view of the case, counsel for defendant might be correct. Let us say with counsel that no sudden emergency confronted plaintiff when he was 100 feet from the King car. This may be true, but, as plaintiff had a perfect right to assume that the King car would remain at a standstill where it had stopped in obedience to the rules of the road, he had the right to speed up to pass along that car, and the emergency therefore arose when Mrs. King blocked his way with her car and forced him to make his choice as to what course he would pursue.

When an emergency so occurs, not created by the motorist, it is well settled he is required to exercise only reasonable care to escape and should not be penalized for error of judgment. Lacy v. Lucky, 19 La. App. 743, 140 So. 857.

In this case, plaintiff, we find, really committed no error of judgment in sliding into the ditch, as otherwise there might have resulted a collision more disastrous in its effects.

Defendants also contend that plaintiff was guilty of contributory negligence.

Plaintiff was not at fault at any time, as above explained, and did not contribute to the accident, which was due entirely to the fault of Mrs. King in barring plaintiff's pathway, and which was the proximate cause of the accident.

The doctrine of the last clear chance is also invoked against plaintiff.

This rule applies when it clearly appears that the party could by the exercise of ordinary care have avoided the injury or could have seen the danger in time to avoid it. Tyer v. Gulf, C. & S. F. Ry. Co., 143 La. 177, 78 So. 438.

Here it is evident that plaintiff could not have foreseen that Mrs. King would suddenly close his passage, and it is equally clear that, after she blocked his way, he could not have avoided the injury.

The defendants were correctly held liable in damages.

### Amount.

Judgment was rendered for $517 in favor of Mr. Chitwood for damages to his auto and for other items. We find no error in that finding.

The sum of $2,100 was decreed in favor of Mrs. Chitwood for her personal injuries and sufferings.

Prior to the accident, Dr. Edwards testifies he had given medical attention to Mrs. Chitwood. The only trouble with her then was occasional attacks of asthma. He attended to her when she was injured, found her skin denuded on her right thigh, discol-

oration of the abdomen, tenderness over the abdomen, and that she was suffering with peritonitis, with much higher blood pressure, all of which was attributable to her injury. She was also suffering with heart disease, due to nervous shock, and could not then attend to her household duties.

The day of the trial Dr. Wood made a professional examination of Mrs. Chitwood. He found an extreme tenderness over the whole abdomen, a rapid heart, inflammation of the muscles of the heart, and high blood pressure, and says she could not perform the usual household duties.

Mrs. Chitwood is over 49 years, and the evidence justifies the conclusion that her sufferings are the result of the accident, which entitle her to the amount decreed in her favor.

Affirmed.