## ALLEN v. ALLBRITTON.

### No. 5377.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 5, 1937.

Moss & Moss, of Winnfield, for appellant.

Harry Fuller, of Winnfield, for appellee.

HAMITER, Judge.

Death resulted to Johnnie T. Allen when a motortruck which he was driving collided with a Chevrolet sedan owned and operated by the defendant. The accident occurred near the air-lift station which fronts on the Pelican Highway about one-half mile south of Urania in La Salle parish.

This suit was brought by the father of decedent to recover for the death of his minor son and for damages experienced by plaintiff's truck.

Negligent operation of the Chevrolet sedan by the defendant is asserted by plaintiff as the cause of the collision. Defendant, in his answer, denies negligence and responsibility, and avers, alternatively, 'that plaintiff's son had the last clear chance to avoid the accident and that he was contributorily negligent.

After a trial of the merits, there was judgment rejecting plaintiff's demands. This appeal resulted.

The Pelican Highway, at and near the scene of the accident, is an 18-foot asphalt thoroughfare which runs north and south. The air-lift station is about 60 feet wide, and it is located about 20 or 22 feet east of the pavement. The shoulder of the road, on the side near the station, is about 4 feet in width. Adjacent to and parallel with that shoulder, and extending approximately 75 feet along the front of the station, is a bridge having a width of 3 feet which covers a ditch 12 to 18 inches in depth. This ditch travels along the road for a considerable distance towards Urania. Three small gas pipes cross the ditch about 2½ feet north of the northern end of the bridge, and enter a 10-inch pipe which

extends across and beneath the highway. Looking in a northerly direction from the station, the highway has a slight incline, and about 200 feet north of the pipes it curves gently.

While a light rain was falling and the pavement was wet, about 4 o'clock on the afternoon of December 18, 1933, one S. Wyble, accompanied by his son-in-law, was driving his car on his right side of this highway in a southerly direction. Behind him and proceeding in the same direction was the Chevrolet sedan driven by defendant Allbritton and in which were two other men. As Allbritton traveled along the gentle curve, according to his own testimony, he saw approaching him and the Wyble car a brown automobile and the truck operated by decedent. The truck was about 450 feet away at this time, and the automobile was ahead of it.

The Allbritton car completed the curve and came up close behind the Wyble car. As this last-mentioned car slowed slightly, the Allbritton machine was pulled to the left in order to pass it. Believing that the oncoming brown machine was traveling too fast and was too close to permit the passing, defendant suddenly steered back to the right, and applied his brakes to prevent a striking of the Wyble car. At this moment the rear end of defendant's car skidded to the east side of the road. The brown car then passed between the Wyble car and the Chevrolet, but in doing so it struck the left front wheel of defendant's car, forcing the right rear wheel of the Chevrolet into the ditch east of the road. By reason of the momentum which it enjoyed, defendant's vehicle, while facing in a northwesterly direction, continued its skidding and traveled south along the slope of the road and the ditch a distance of about 20 feet to and over the pipe. Just as that machine was coming to a stop, with its back wheels on the northern end of the bridge and its front end pointing northwest, the entire car being off the pavement, the left front wheel of the truck struck the left portion of the rear end of the Allbritton car. This caused defendant's automobile to become perpendicular with and to face the road, its front end resting 6 or 8 feet from the pavement. The truck turned southeast and traveled to a point about 2 feet from the air-lift station. About the time of the collision of the vehicles and the sudden turning of the truck, plaintiff's son was thrown from his seat onto the ground. He sustained severe injuries from which he died several weeks later.

It is our opinion that defendant was negligent in the operation of his car and that such negligence was the efficient, sole, and proximate cause of the collision, and, consequently, the death of plaintiff's son.

While defendant was in the slight curve which was about 200 feet north of the pipes, he saw the approaching truck and brown car; the truck being about 450 feet away and the other vehicle being in front of it. According to the testimony of one J. R. Noble, a defense and disinterested witness who was at the station and had an unobstructed view of the collision, defendant followed the Wyble car until he reached a point about 40 feet from the pipes, at which place he drove to the left for the purpose of passing that car, and then suddenly cut back to the right and applied his brakes. It is thus to be seen that about 160 feet of the aforementioned 450-foot distance which separated defendant from the truck was used by him before attempting the passing, and it can reasonably be said that the oncoming brown car, which preceded the truck and was proceeding rapidly, used a goodly portion of that intervening distance in traveling toward defendant. These facts disclose that defendant acted in violation of the provisions of paragraph (c) of rule 7 of section 3 of Act No. 21 of 1932, which read as follows:

"The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing."

It was defendant's duty, in view of the above circumstances, and particularly of his knowledge of the approaching brown car and truck, to continue behind the Wyble car until that traffic had passed.

If it be admitted, as counsel contends, that defendant was compelled to attempt a passing of the Wyble machine because of that car's slowing, then it is obvious that he was negligent in following it too closely. The record does not

disclose that Wyble was making a sudden stop at the time. To the contrary, it shows that he was slowing slightly. Charlie Tullos, who was seated beside Allbritton on the front seat of the Chevrolet, testified that Wyble's car was some twelve to twenty steps (this being from 36 to 60 feet) from them when they rounded the curve. The Chevrolet, as shown by the evidence, was traveling faster than the lead car, and it can reasonably be concluded that the cars were extremely close when the attempted passing was begun. Section 942 of 2 Blashfield's Cyclopedia of Automobile Law (Permanent Ed.) provides that:

"A motorist has right to follow another motorist at reasonable and safe distance. However, he must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of a car in front suddenly stopping, maintaining a proper lookout for the car immediately preceding him, and so that he can stop without a collision, or can turn out sufficiently to pass the vehicle in front without going across the street in the way of traffic approaching from the opposite direction, as that will naturally result in collision with such traffic."

We think that defendant Allbritton was not following the Wyble car at the reasonable and safe distance that the law required of him. The skidding and accident would not have resulted if the required care and caution had been exercised by defendant in following the Wyble car and in attempting to pass it. A duty devolved on him to be unusually careful on this occasion, for rain was falling at the time and the asphalt pavement was wet.

"It is a matter of common knowledge that in the contact of rubber and asphalt water serves as a lubricant, and that an automobile driven on a wet asphalt pavement will skid if its speed is checked or its course changed suddenly. That is a fact of experience and observation which any driver must be held to know." Provosty v. Christy (La.App.) 152 So. 784, 785, 787.

In the case of Ernesto v. Gutierrez, 16 La.App. 550, 134 So. 114, the opinion of which was written by Justice Higgins, who is presently a member of the Supreme Court, the defendant was held to be negligent under the following state of facts:

"The record shows that the plaintiff was driving on the paved public highway in St. Bernard parish away from the city of New Orleans. The defendant was proceeding on the same highway towards the city. The road was straight, and the accident occurred about 4 o'clock in the afternoon. It appears that it had been raining, and that there was some sand or mud on the paved portion of the highway. The paved roadway is between 20 and 24 feet wide, with a gravel shoulder on both sides of about 4 feet. There was a truck about 100 feet in front of defendant's car going in the same direction. As the defendant attempted to go around the truck, the plaintiff's car, which was coming from the opposite direction, was apparently in such close proximity that the defendant deemed it unwise to continue, and attempted to apply his brakes, with the result that his car skidded to the left side of the road. The plaintiff, seeing the danger, drove his car to the extreme right side of the road, so that its right wheels were off the pavement and on the gravel shoulder of the highway. He had almost come to a stop when the front of the defendant's car struck the left front side of plaintiff's car, and, from the momentum and force of the impact, turned and also came into collision with the rear end of plaintiff's car, causing it to turn over on its right side in the ditch adjacent to the road."

We now pass to a consideration of the alleged contributory negligence on the part of plaintiff's son, and the contention that he had the last clear chance to avoid the accident.

The evidence reveals that the truck left the pavement at a point about 10 feet north of the southern end of the bridge, and that it traveled at a slight angle onto and along said bridge a distance of approximately 65 feet to the place of collision. The speed that it was employing is not shown by the record. The Chevrolet's attempted passing occurred about 40 feet north of the pipes, and necessarily its skidding began a few feet closer. When the skidding started, the brown car was immediately in front of the air station, traveling north at a fast rate of speed. Defendant's car, after reaching the ditch, proceeded down the edge of the shoulder about 20 feet, crossed over the pipes, and onto the bridge. It was *almost* still when the truck struck it. About this moment, the brown car was still close enough to permit its occupants to hear the impact. The truck, after the collision, turned southeast and traveled a distance of about 40 feet, running over a

crosstie and some iron pipes before coming to a stop. All of this indicates that defendant's car, the brown automobile, and the truck were in close proximity to one another and were traveling rapidly when the skidding began, and that only a small amount of time intervened from that instant until the moment of the collision.

Accordingly, it can only be concluded that the negligent operation of defendant's machine created a sudden emergency, and the drivers of the brown car and the truck were called upon to extricate themselves. The judgment of the operator of the brown machine proved to be correct, for he proceeded along the highway without any apparent harm to himself. Plaintiff's son chose to steer his truck off the road, undoubtedly hoping and anticipating that the skidding Chevrolet would not cross his line of travel. This course, as we have seen, resulted disastrously to him.

■ Defendant's counsel calls attention to the fact that the east half of the highway was free of traffic after defendant's car left it and the brown car had passed. He then argues that decedent could have avoided the accident by stopping his truck, if the brakes had been in proper order, or by continuing up the road in a straight course; and that his failure to do either rendered him contributorily negligent. We think that this argument is unavailing. In the first place, the evidence does not preponderate in favor of the fact that the brakes of the truck were defective. The testimony of several of the witnesses is that they were in good condition on the morning of and for several weeks prior to the accident. Witness Noble stated that decedent appeared to be riding his brakes as he left the highway and when the cars collided, but this alone does not conclusively show that such brakes were defective. In the second place, plaintiff's son was faced with an emergency which was not of his own making, as we have hereinabove shown, but was created by the negligence of defendant. He adopted a course that appeared proper to him, and one which any other person of ordinary prudence might have pursued. He drove his truck from the highway, attempting to avert a collision. In doing this he erred in his judgment; but under the circumstances it cannot be said that he was contributorily negligent.

"An automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence, placed in such a position, might make, even though he did not make the wisest choice." Lacy v. Lucky, 19 La.App. 743, 140 So. 857, 861; Smith v. Interurban Transportation Co., 5 La.App. 704.

Because of the nearness of the vehicles to one another when the skidding began, and of the speeds that they were traveling, it is apparent that plaintiff's son did not have the last clear chance to avoid the accident. Smith v. Interurban Transportation Co., supra.

■ At the time of the collision on December 18, 1933, plaintiff's son was nineteen years of age. He attained his twentieth birthday on January 3, 1934, and died two days later. His mother had passed away eighteen years previously. Much pain and suffering were endured and experienced by decedent during the several weeks which intervened between the date of the accident and that of his death. When injured, he was living at the home of plaintiff, and was assisting him in the operation of a log truck and in the support of his family. Under that state of facts, we feel that an award of $5,500 for the death of his son should be made to plaintiff. This amount, we think, is just and proper, and is consistent with awards made in other cases found in the jurisprudence of this state which involved deaths surrounded by somewhat similar circumstances.

The truck, according to the record, was valued at from $200 to $250 shortly before the accident. It experienced major damages in the collision, as a result of which its salvage value was estimated at $75. It is our opinion that the proper award on this item of damages is $225 less the salvage value, or the sum of $150.

Accordingly, the judgment of the trial court is reversed and avoided, and there is now judgment in favor of plaintiff and against defendant for $5,650, together with legal interest from judicial demand until paid. Defendant shall pay the costs of both courts.