ELLIS, Judge.
This is a direct action against the insurer of an automobile in which the plaintiff was riding as a guest passenger to recover damages suffered by the plaintiff. The lower court rendered judgment in favor of the defendant and the plaintiff has appealed.
The accident giving rise to this suit was a head-on collision which occurred at approximately 1:20 P.M. on July 19, 1958 on Louisiana Highway No. 27, in Calcasieu Parish. An automobile traveling south upon the highway, owned and driven by Forrest Simmons, in which plaintiff, T. J. Woodard, was a guest passenger, collided with a northbound vehicle owned and driven by Cliff C. Roy. At the time of the accident the weather was clear, visibility good and the road surface dry. The highway was straight north and south for a considerable distance in each direction from the scene of the accident. As the two vehicles approached each other Cliff C. Roy lost control of his automobile and came over into the insured’s,' Simmons’, lane of traffic, where the collision occurred.
The plaintiff alleged that Simmons was driving his automobile in excess of the speed limit and that he saw the Roy automobile approaching in Simmons’ lane of traffic; was aware of an impending collision and had ample opportunity to avoid it. In the alternative, the doctrine of last clear chance was plead. The defendant, insurer of Simmons, denied any negligence upon the part of Simmons, pleaded the sole and proximate cause of the accident was the gross negligence of Roy in driving his automobile into Simmons’ lane of traffic when the automobiles were so near together that it was impossible for Simmons to avoid the collision.
By agreement of counsel the companion suit of Peerless Insurance Co., the deductible collision insurance carrier on the Simmons automobile, against Roy, was consolidated for purpose of trial. In that suit, a subrogation claim, the lower court rendered judgment in favor of the plaintiff against Roy for the amount of its sub-rogation clause. No appeal was taken from that case.
*286 The plaintiff-appellant argues that Simmons was negligent in failing to bring his vehicle to a complete stop, sound his horn and make some maneuver to his left or to the shoulder of the road in order to avoid the collision; that he had the last clear chance to avoid the accident. The defendant claims Simmons was presented with a sudden emergency since the Roy automobile came into his lane of traffic, and that he, Simmons, did everything possible under the circumstances to avoid the accident and was guilty of no negligence whatsoever.
There was no proof whatsoever that Simmons was driving at an excessive rate of speed under the conditions which prevailed. There were two other passengers, Cooley and Brister, aside from the plaintiff, who were riding in the Simmons automobile. These, as well as Simmons, testified the Simmons car was traveling at approximately SS to 60 miles per hour. The plaintiff, Woodard, was sitting on the right front seat of the Simmons vehicle and he himself testified that just before the accident occurred he noticed the speedometer and the car was traveling at about 55 miles per hour. The State Trooper, Clark, who investigated the accident, testified that the speed limit at the scene of the accident was 60 miles per hour. There is nothing in this record to show the speed of the Simmons automobile was excessive under the circumstances. Roy’s testimony that the Simmons automobile was traveling at 70 to 75 miles per hour is not substantiated and his testimony was evidently discounted by the trial court.
All of the testimony indicates the Simmons automobile was in its own traffic lane at the time of the accident and that the accident occurred on the west portion of this lane. Cooley, who was sitting on the right rear seat of Simmons’ car, testified that he had shut his eyes a short time before the accident but that the application of the brakes on the Simmons automobile made him look up; that the Roy car was about 10 feet in front of the Simmons automobile when he first saw it and was completely in the south traffic lane, or Simmons’ correct lane, and that the Simmons automobile was partly on the west shoulder or to the right of this lane when the collision occurred. Brister, another passenger, who was sitting in the middle of the rear seat of the Simmons car, testified he first saw the Roy automobile when it was 60 to 70 feet from the Simmons car and that it was completely over into its wrong lane of traffic; that Simmons applied his brakes and pulled to his right, a couple of feet onto the shoulder, Trooper Clark, testifying as to the physical evidence, stated he observed skid marks for approximately 45 feet and that these were all in the southbound or Simmons’ lane of traffic; that the collision occurred in the southbound traffic lane. Trooper Fontenot, who also investigated the accident, noted the skid marks to be 45 feet in length and all located in the southbound traffic lane. This officer also testified all of the debris resulting from the accident were in the southbound traffic lane, and his testimony is to the effect that the collision occurred entirely in this lane. It is clear the collision occurred in the southbound traffic lane and somewhat to the west or right portion of this lane.
Simmons was the only one in the insured car who saw the Roy automobile when it first entered his lane of traffic. He estimated the distance between the automobiles at that time at about 200 or 300 feet but continued to state that the correct estimate of 200 feet was a more accurate one. That this is approximately the correct distance was borne out by the testimony of Roy who stated he first saw the Simmons automobile approaching in the same lane of traffic he had pulled into when the automobiles were about 200 feet apart.
Simmons related he took his foot from the accelerator immediately upon seeing the Roy vehicle come over into his lane of traffic and when the Roy car was about 75 feet away he applied his brakes and turned to his right. Considering the skid *287 marks of 45 feet and the reaction time for an ordinary driver to apply his brakes, three-quarters of a second, and the speed of the Simmons automobile of 55 miles per hour, Simmons must have traveled 65 feet during the reaction time. If the cars were 200 feet apart when the Roy automobile came into the wrong traffic lane Simmons had less than two seconds to act and make a decision as to what he was going to do. If the distance was 300 feet, then he had only about three seconds to make up his mind. He was facing a sudden emergency. Immediately upon sensing this he took his foot from the accelerator and applied his brakes and turned to his right to attempt to avoid the accident. He was partially on the shoulder of the road when the collision occurred. He stated he did not try to turn to his left because the other driver, Roy, might have turned back to his right and the collision would have occurred anyway; that with the cars approaching each other as fast as they were his natural reaction was to turn to the right and stay out of the left-hand lane.
The appellant seems to have founded his case upon the doctrine of the last clear chance and we now review the decisions as to the duty of a driver in Simmons’ position and whether the facts found herein justify an application of this doctrine.
First, it is well settled that a motorist traveling upon the right side of a highway has the right to assume that anyone who pulls over into his lane will yield the right of way and return to the proper lane in sufficient time to avoid a collision. This rule is set forth in LSA-R.S. 32:232, which states:
“Drivers of vehicles- proceeding in opposite directions shall pass each other to the right, each giving the other for at least two hundred feet before meeting, one half of the main traveled portion of the highway.”
That a motorist has the right to assume that one traveling on the wrong side will yield the right of way in sufficient timé-is reviewed in the case of Wood v. Manufacturers Casualty Insurance Co., La.App., 107 So.2d 309, 314, and authorities cited therein.
In the Wood case there was a situation similar to the facts here. In discussing this situation and the test of the judgment to be exercised by a driver faced with' such an emergency the court said:
“From the facts as established in the record, and as referred to hereinabove, it could be but concluded that the Chrysler and the Plymouth were only 150, or possibly 200, feet apart when the Plymouth crossed into the Chrysler’s lane of travel, and that, thereafter, Wood did all that a reasonable and prudent man could have done under the circumstances. Pie applied his brakes and directed his car out of that lane of travel. Therefore, whatever dereliction of duty, if any, is chargeable to Wood, such was neither a proximate nor a contributing cause of the accident.
“No error of judgment can be charged to Wood. Even so, when one is brought face-to-face with unexpected danger brought about by the gross fault of another, he cannot be held to be contributorily negligent upon his failure to exercise the best judgment. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Davis v. Lewis & Lewis, 226 La. 1064, 78 So.2d 174; Hagaman v. Bankers Indemnity Ins. Co., La.App., 7 So.2d 390; Jacob v. Edwards, La.App., 171 So. 165; Lacy v. Lucky, supra [19 La.App. 743, 140 So. 857]; Willis v. Standard Oil Company, 17 La.App. 217, 135 So. 777; Finance Security Corp. v. Alford, La.App., 63 So.2d 872; Brock v. Southern Farm Bureau Cas. Ins. Co., La.App., 94 So.2d 492; Peeples v. Dobson, Maryland Cas. Co., La.App., 99 So.2d 161; Litton v. Samuel, La.App., 98 So.2d 534.”
Stockwell v. Gulf Engineering Co., La.App., 83 So.2d 386, also sets out the right of a motorist traveling upon the right side of the road to assume the driver of a *288 vehicle aproaching from the opposite direction on the wrong side of the road will return to his proper side in sufficient time to avoid an accident. Therein the driver of a truck saw another automobile approaching in the wrong lane of traffic about 150 to 200 yards away and when it became evident the automobile was not going to pull back into its proper lane he applied his brakes and pulled to his right. The •court found this driver guilty of no negligence, stating that when it became apparent to him that a danger existed and that the driver of the on-coming car was not going to return to his proper lane he took what precaution he could to avert a collision. Also see Peeples v. Dobson, Maryland Cas. Co., La.App., 99 So.2d 161.
Plaintiff-appellant has cited various cases in support of his contention that the insured driver, Simmons, had the last clear chance to avoid the accident. Among these is Williams v. Brown, La.App., 181 So. 679, 682. In that case the driver of a truck saw another truck approaching, on the wrong side of highway. The approaching truck was loaded with Negroes and a passenger told the driver of the first truck to be careful since “negroes always take the road.” Instead of taking any precaution the driver •continued rapidly forward for 100 yards or more, until an emergency was created. The •court held under the facts of that case that the driver of the first truck had the last ■clear chance to avoid the accident since had he exercised ordinary care and prudence at the time he realized an emergency was created he yet had time to avoid the accident •by taking some steps to prevent it. This •case is inapposite here.
Also cited by appellant is Rottman v. Beverly, 183 La. 947, 165 So. 153, 158. That case involved an accident between an automobile and a pedestrian. In holding the driver liable the court found he had the last clear chance to avert the accident by making use of “available and adequate means.” The driver did not use his brakes except partially and relied upon the pedestrian to discover the peril and stop or get out of his way. The facts in that case show that had the driver of the car made full use of his brakes when he first saw the pedestrian enter the highway he could have stopped the car or brought it under such control as to enable him to avoid the accident. While we agree with the Rottman case it is not applicable here.
The other cases cited by appellant are not controlling since they concern accidents where the driver clearly had time and opportunity to avoid the accidents by using ordinary care and prudence when the peril of the other person was discovered.
We find nothing in this record to show Simmons did not take ordinary and prudent care as soon as he discovered the Roy car was in his lane of traffic. All of the evidence is to the effect that he took his foot off the accelerator and as soon thereafter as possible applied his brakes and pulled to his right. The Roy automobile, from the evidence, apparently had some defect in its steering mechanism and its driver pulled over into his left hand lane of traffic directly in the path of the Simmons automobile. Simmons took every precaution possible and we agree with the trial court that plaintiff’s case should be dismissed.
The judgment of the lower court is affirmed.