ELLIS, Judge.
Defendants have appealed from a judgment awarding damages to plaintiff for personal injuries suffered as the result of an automobile collision wherein a 1950 Pontiac owned by defendant, W. A. Sampson, and insured by the defendant, Delta Fire & Casually Co., and being driven by Sampson’s wife struck the rear end of an automobile belonging to and being driven by the plaintiff, which occurred on Sept. 4, 1956, in Baton Rouge, Louisiana.
On the date in question the automobile of the plaintiff was stopped to the rear of another automobile at a red light and Mrs. Sampson, driving her defendant husband’s automobile, was parked to the rear of plaintiff. Mrs. Sampson thought that the plaintiff’s car had started to move and started forward in her car. She was mistaken and ran into the rear end of the plaintiff’s automobile resulting in what might be termed light damages under present day standards to the plaintiff’s automobile, amounting to the stipulated sum of $95.32. There is no question of the negligence of Mrs. Sampson, however, it is contended by counsel for defendant that the judgment is erroneous as to W. A. Sampson because plaintiff alleged that the latter owned and was driving a Pontiac automobile at the time of the rear end collision. It was alleged by plaintiff that “at the time of the said accident, the automobile which struck petitioner was driven by defendant W. A. Sampson, and that the said automobile and driver thereof were covered by policy of liability insurance issued by defendant, Delta Fire & Casualty Co., which said policy was in full force and effect at the time of the said accident * * *
The defendants’ answer, they denied that W. A. Sampson was operating the automobile, but admitted that Delta Fire & Casualty Company “had in full force and effect a policy of liability insurance covering the 1950 Pontiac automobile for bodily injury, and property damage liability on the part of the driver thereof, * * * ”.
Counsel for defendant correctly contends that there is no showing in the record that W. A. Sampson was driving the car and in control of it at the time of the accident, nor that it was being operated on a mission for his benefit or on a mission for the benefit of the community existing between him and his wife. Therefore, it is argued that the judgment as to W. A. Sampson should be reversed.
On the trial of the case it was proven that Mrs. Odessa M. Sampson was driving the automobile which was insured by the Delta Fire & Casualty Company. It was a 1950 Pontiac covered by the insurance policy and the one involved in the rear end collision. Mrs. Sampson was asked by counsel for defendant the following question and gave the following answer:
“Q. What is your husband’s name, Mrs. Sampson? A. Willie.”
The ownership of the car in the defendant W. A. Sampson is not proven in the record. The nearest proof of ownership was found under direct examination by counsel for defendant, where in response to the question “Tell the Court what happened”?, Mrs. Sampson answered in part: “ * * * When I saw the car ahead of him turn left I thought sure I saw his car moving so I started mine and that’s when I hit his car, when I started mine. I had a Pontiac and it has posts * * * (Emphasis added.)
Defendant takes the position that there is no showing or proof that the Pontiac automobile was being operated on a mission for the benefit of W. A. Sampson or for the benefit of the community existing between him and his wife. We believe that in those cases where the automobile involved in the collision is alleged or proven to have been operated or driven by the wife, together with proper allegation of negligence on her part, and the husband is sued, in order for the latter to be relieved of liability on the ground that the mission of the wife was not for his benefit *217 or that of the community existing between him and his wife, he must plead or set up such facts as a defense to the suit. It has been held that the burden in such cases is on the husband. In Paderas v. Stauffer, 10 La.App. 50, 120 So. 886, 887, the Orleans Court of Appeal held:
“It is contended on behalf of Mr. Stauffer that, as Mrs. Stauffer was driving her own car and was not on any mission for him, he cannot be held liable for her negligence.
“Even conceding that a husband is not liable for the torts of his wife resulting from her negligence while driving her own automobile in her own separate affairs and concerns, it seems to us that Mr. Stauffer’s testimony falls far short of showing that Mrs. Stauffer, at the time of the accident, was so engaged. Just what was the object of Mrs. Stauffer’s trip in the automobile is a matter so completely and exclusively within the knowledge of the two defendants that the burden of producing evidence concerning the reason for her making the trip is placed upon them. Their failure to prove that she was on a mission for her separate benefit results in the inevitable conclusion that, as a matter of fact, she was on a community errand. Especially is this so where the evidence shows, as it does here, that she was shopping. If she was shopping for the household, she was on a community errand, and, if she was engaged in selecting clothes, or hats, or any of the numberless things a woman requires for her own comfort or adornment, then, likewise, she was on a community errand, and in either such event she was just as much the agent of her husband as head and master of the community as would have been the family chauffeur.
“ ‘Clothing of the wife paid for by the husband belongs to the community.’ Munch v. Central Laundry Co., 2 La.App. 123.
“See, also Sheild v. F. Johnson & Son Co., Ltd., 132 La. 773, 61 So. 787, 47 L.R.A.,N.S., 1080.
“If, then, the wife’s act in purchasing clothing, or groceries, or household necessities, could make the husband, as head of the community, liable for the purchase price, we fail to understand why the wife’s negligence in driving the automobile to and from the place of purchase should not likewise be chargeable to the husband.
“On the question, then, of the liability of the husband, we feel that the judgment is correct.”
Again in Levy v. New Orleans & N. E. Oil Co, La.App., 20 So.2d 559, 567, the Orleans Court of Appeal cited and reaffirmed the holding in Paderas v. Stauffer, in the following language:
“What then was the purpose of which the automobile was being used when the accident took place? The three ladies were on their way to visit a dressmaker, and, of course, if it was Mrs. Levy who was interested in seeing the dressmaker, then it could be said that the trip was being made in the interest of the community. Paderas v. Stauffer, 10 La.App. 50, 119 So. 757, 120 So. 886, 887. Mr. Levy made no effort to clear up this question, and we think that in order for him to recover for the value of his car it was necessary that it be shown that it was not being used on a community errand. The burden was on him to show this fact for when it is shown that a wife is driving the community car and an accident occurs, and the husband desires to avoid being liable as head of the community or wishes to make claim for the damage to the automobile, the burden is on him to produce the necessary proof to sustain his contention that the car was not being used in the interest of the community. In Paderas v. Stauffer, supra, where the contention of the defendant depended *218 upon a showing that the purpose of the trip was not in the interest of the community, we said that the reason for such a trip ‘is a matter so completely and exclusively within the knowledge of (the members of the community) that the burden of producing evidence concerning the reason for * * * the trip is placed upon them,’ ”
In Howard v. Toye Brothers Yellow Cab Company, La.App., 70 So.2d 465, 468, the Orleans Court of Appeal again considered the same question with the same results. It held:
“We think that it is well settled in the jurisprudence of this State that a husband, either personally or as master of the community, is not liable for the results of the torts of his wife merely because of the marital relationship which exists between them. He is liable only where the tort of the wife was committed while she was something for the benefit of the community, was on a community errand. This rule is well stated in Aetna Casualty & Surety Co. v. Simms, La.App., 200 So. 34, 35:
“ ‘Under the well-settled jurisprudence of this state, the husband is not condemned for the torts of his wife by reason of the existing marital relationship. For liability to be imposed on him, where the tort was committed in his absence, it must appear that she was serving at the time in the capacity of his agent or was engaged on an errand for the benefit of the community. Tuck v. Harmon, La.App., 151 So. 803; Wise v. Smith, La.App., 186 So. 857.’
“See, also, Globe Indemnity Co. v. Quesenberry, 1 La.App. 364.
“However, if the husband, as head of the community, would escape liability for the result of the torts of the wife, it seems proper that there should be placed on him the burden of showing that the wife, at the time of the commission of the tort which resulted in the damage, was not serving a community purpose. Obviously the injured party can seldom have any information on this question whereas the husband should be able, certainly in most instances, to show either that the wife was or was not engaged in doing something which was intended to redound to the benefit of the community. We considered such a question in Paderas v. Stauffer, 10 La.App. 50, 119 So. 757, 120 So. 886, 887:
* 5ft * * * *
“If we were correct in this conclusion then it was incumbent here on the defendant, Ernest Guillory, if he would escape liability, to allege and to show that Mrs. Guillory was not operating the car for the benefit of the community, and, as the record contains not one syllable which gives the slightest information on this subject, we think that it necessarily follows that the exception filed by Ernest Guillory should have been overruled.”
It is true that the Supreme Court granted writs in this case, however, the reversal did not turn upon the point under consideration. The Supreme Court merely held that no appeal had been originally taken from the judgment of the District Court which had maintained an exception of no right or cause of action filed on behalf of Ernest Guillory (husband) and, therefore, any consideration of such judgment by the Court of Appeal was in error.
The matter would be very simple had plaintiff properly alleged that Mrs. Odessa M. Sampson, wife of the defendant, W. A. Sampson, was driving the automobile at the time of the collision. But Mrs. Odessa M. Sampson is not mentioned in plaintiff’s petition. The proof, however, in the record without objection, shows that “Mrs. Samson”, another place “Mrs. Odessa M. Sampson” whose husband was named “Wil *219 lie”, was driving and operating “a Pontiac” which she referred to as "mine”.
The reader is probably asking the question, “Why don’t the court look at the policy of insurance?” for the name of the insured which undoubtedly would be W. A. Sampson?” We would but the policy is not in the record and the only proof before the court is the admission by Delta Fire & Insurance Company that the policy covered the 1950 Pontiac automobile for bodily injury and property damage liability “on the part of the driver thereof.” Although it is not alleged, if the proof allowed without objection is sufficient to show that Mrs. Odessa M. Sampson was the driver of the automobile and the wife of the defendant, W. A. Sampson who was made the defendant in the suit, then under the authorities cited the burden of proof being upon the husband to show the lack ■of admission on the part of his wife for his benefit or for the benefit of the community, and having failed to offer any such testimony and there being a presumption otherwise of community liability, the judgment would have to be affirmed. It is essential to the cause of action against W. A. Sampson that it be proven that the Mrs. Sampson who identified herself as Mrs. •Odessa M. Sampson was the wife of the defendant. The relationship of husband and wife must be shown before there is any presumption of any community mission or benefit. The only proof in the record is the testimony of Mrs. Odessa M. Sampson that her husband’s name was “Willie”. We have, though, counsel for defendant in his brief treating the W. A. Sampson, made defendant in this suit, and Mrs. Odessa M. Sampson, as husband and wife. In view of the fact that he does not question such status and also offers the defense that W. A. Sampson can not be held personally liable for the reason that there is no proof that Mrs. Odessa M. Sampson was on a mission for his benefit or for the benefit of the community existing between “him and his wife”, we will therefore consider W. A. Sampson defendant herein, and Mrs. Odessa M. Sampson as husband and wife, and in view of the fact, that the former has offered no evidence that his wife was not on a mission for his benefit or that of the community, will affirm the ruling and judgment of the lower court as to his liability.
We next come to the question of quantum. The plaintiff did not express nor reveal to the eye any disability immediately after the collision. Undoubtedly the blow was not actually of great force, as the car was parked a short distance to the rear and had only moved forward to a stopped position a short distance. Plaintiff testified that immediately after the accident “I didn’t think anything was wrong until later that evening I noticed whenever I started to do anything my back would start hurting, me and my neck got stiff, and the next morning I was really stiff.” The accident occurred at approximately 11 A.M. and plaintiff testified that he made a night visit to a general practitioner, Dr. George Yates. According to stipulation between counsel as to what Dr. Yates would testify if called, was that, he saw the plaintiff the day after the accident, at which time he was complaining of pain in the neck and back; that he examined plaintiff and felt that his complaints were due to a little shock and that his back and neck would get alright. The next day plaintiff called him and told him he still had the same complaints and he went to Dr. Yates’ office and given a heat treatment and a shot. He did not see plaintiff any more for the complaints as a result of the accident. It is also shown that plaintiff visited a specialist, Dr. Bryan; also Dr. Luikart and Dr. Bernard. Dr. Luikart was evidently a heart specialist; according to- the testimony of the plaintiff he went to him because he was nervous and did not recall whether he told him of any back pains. None of these doctors were called nor any stipulation made as to what they would testify if called. It was also shown that plaintiff had been in a very serious accident in 1952 in which he suffered a fractured *220 collar bone, knee injury and “some knots, bruises” and “I was stiff all over.” In this conection Mrs. Sampson testified that the plaintiff called her twice or at least said his name was Mack Johnson and stated to her that he had thought he would have to go to the hospital on account of his back but that he didn’t have to and also stated “I had a back injury before.” In the second conversation he asked what she was going to do about the accident and she referred him to the insurance company.
On September 10, 1956, plaintiff visited Dr. Thomas Campanella, an orthopedic surgeon, in Baton Rouge, La., and was given an examination for his complaints of pain in his back. The only objective symptom which Dr. Campanella found was “some spasm of the right paravertebral muscle mass.” Other than that plaintiff had excellent motion of the back and could move in all directions without any pain. He was sent to the Baton Rouge General Hospital for x-ray studies of the spine and the films were negative for any bone or joint injury. As a result of the examination and x-rays it was concluded by Dr. Campanella that the patient had sustained “simply a pulled muscle of the back.” Dr. Campanella saw the plaintiff again on September 25, 1956, at which time he thought that he had made a complete recovery and discharge. He did not see plaintiff again until February 18, 1957, when the latter visited him with complaints of frequent catches and pain in the low back. Examination by Dr. Campanella revealed excellent range of motion in all directions, however, there “appeared to be some evidence of tightness of the right paravertebral muscle mass. On bending to the left he had no pain. On bending to the right the patient had some tenderness in the lumbar-sacral joint. A straight leg raising test, Patrick test, were all productive of pain on the right side, but were negative on the left side. There was no evidence of any sciatica involvement of the sciatic nerve. The tests for those, such as the tibia compression test and reflex changes, were all negative. At that time it was my impression that he had some residual disability of the back, which was limited to the right side of his back in the region of the lumbar-sacral joint. I believe that this will cause him some difficulty at times, whereas at other times he was free of pain. For this reason he was given a five to ten per cent disability of the back when he would have an attack; in other words, with an attack of pain he would have some discomfort but it should not prevent him from working, and this acuteness was rated as approximately five to ten per cent. That was all my findings on this patient.” Dr. Campanella testified, however, that he did prescribe a Sealy Posturepedic mattress. On cross examination Dr. Campanella stated that he would consider the intermittent “catch” in plaintiff’s back which he rated as a five to ten per cent disability when it was present as “just a minor condition”, which might last for several days to a week. Although plaintiff testified that this catch began about two weeks after the accident, Dr. Campanella thought that the fact that it was not brought to his attention until February would make it more remote as a result of the accident. Dr. Campanella in the questioning by the court stated that the type of injury which the plaintiff had when he first visited him is the kind that apparently will right itself, then reoccur at a later date.
Plaintiff was a barber and beautician and there is no testimony positive enough or sufficient for this court to say that he lost any time from his business. He claims $100 for loss of time but utterly failed to prove this item. In fact, there was little attempt to substantiate this claim.
Taking into consideration the lightness of the blow to plaintiff’s car, the absence of any manifestation of any injury at the time of the collision, and the unimpressive medical testimony, in that neither of the doctors, Yates or Campanella, thought plaintiff had anything other than a minor injury, and the fact that he was discharged by Dr. Campanella as being recovered from *221 any effects of the accident on September 26, 1956, or 21 days after the accident, and the total lack of any evidence as to any pain and suffering other than what might be termed a discomfort, as the only medication prescribed was a few heat treatments and one shot, the nature and kind not shown, and a hard mattress, leads us to the conclusion that plaintiff’s injuries were not as serious as they were evidently thought to be by the trial judge. We do not have any written reasons but undoubtedly he must have attributed some permanent disability to plaintiff in connection with the latter’s claim of intermittent or reoccurring pain in the back for which Dr. Campanella examined him on February 18, 1957. However, Dr. Campanella described his condition as being of a minor nature and causing five to ten per cent disability when it occurred, which would not have been sufficient to prevent or interfere with plaintiff’s work other than the discomfort.
The cases cited by plaintiff of LeBourgeois v. Indiana Lumbermens Mutual Ins. Co., La.App., 101 So.2d 720, Thomson v. Audubon Insurance Company, La.App., 101 So.2d 752, and Denny v. Cook, La.App., 101 So.2d 632, involved suits by plaintiffs with more serious injuries than plaintiff’s in the case at bar. We see no need to enter into a detailed discussion of the injuries of each of the cited cases.
The cases cited by counsel for defendant of Smedley v. Travelers Indemnity Co., La.App., 99 So.2d 178, Cormier v. Southern Farm Bureau Casualty Insurance Co., La.App., 94 So.2d 901, Anderson v. Morgan City Canning Co., La.App., 73 So.2d 196 and Johnson v. Southern Bell Telephone Co., La.App., 106 So.2d 22, are similar in that they involve minor injuries. We have an additional possibility or probability present in the case at bar that plaintiff will have a recurrence from time to time of the “catch” in his back described by Dr. Campanella as minor but which he estimated would cause a five to ten per cent disability, and would be painful while it lasted. We will therefore award the plaintiff the sum of $1,500 for his personal injuries, as a result of the accident.
Counsel for defendant contends that the amount allowed by the lower court for the Posturepedic mattress should not be allowed as plaintiff did not purchase same until approximately five months after the accident. His excuse was that he did not have the money right away. The fact remains that Dr. Campanella did prescribe the mattress and the lower court thought that the claim was justified and allowed it, and we find no manifest error in such allowance.
For the above and foregoing reasons the judgment of the lower court is amended by reducing the award for personal injuries to the sum of $1,500 and as amended the judgment is affirmed.
Amended and affirmed.