REID, Judge.
This suit was brought by Mrs. Alida Elizabeth Kraemer Landry to recover for painful injuries sustained in an automobile accident. Mrs. Landry was a guest passenger in her husband’s automobile at the time of the accident. The District Court granted judgment in her favor against the driver of the other car, the owner of that car (the father of the minor who was driving said vehicle) and the owner’s liability insurer, in the amount of $20,000.00. Tanile J. Landry’s liability insurance company, were not cast in this judgment, since the trial court found that Mr. Landry was not contributorily negligent. The driver, William A. Ostheimer, E. A. Ostheimer and Marquette Casualty Company have perfected suspensive appeals from the adverse judgment of the District Court.
On appeal, defendants made several specifications of error. Defendants contend that the District Court was in error in finding:
“1. That the negligence of William Ostheimer was the proximate cause of the accident.
“2. That Tanile Landry’s acts were not the sole proximate cause of the accident.
“3. That Tanile Landry was not guilty of contributory negligence.
“4. That Alida Elizabeth Kraemer Landry was entitled to damages in the sum of $20,000.00, plus interest and costs.”
The record reveals that the accident out of which this suit arose occurred at the intersection of Louisiana State Highway 659 and Funderburk Avenue, 3 miles out of Houma, Louisiana, at approximately 8:10 P.M. on November 30, 1958. At that point, Funderburk Avenue runs generally north and south and Highway 659 runs approximately east and west. Just prior to the accident Mr. Landry was driving in an easterly direction on Highway 659 and William A. Ostheimer was driving in a southerly direction on Funderburk Avenue. The record indicates that Mr. Landry was traveling at a rate of approximately 35 to 40 miles per hour and the Ostheimer car was being driven at a rate of approximately 25 miles per hour. It should be noted that Highway 659 runs parallel to Bayou Terre- *499 bonne and that the portion of Funderburk Avenue in question connects a highway on the other side of Bayou Terrebonne, with Highway 659 which at this point is to the south of the Bayou. Apparently, Funder-burk Avenue runs for approximately a little less than 100 feet from the highway to the North to the point where the bridge crossing the Bayou begins. There is a little over 100 feet between the Bridge and Highway 659 to the south of the Bayou.
At the time of the accident, Highway 659 had just been paved, but the shoulders were not completed. However, there were no speed limit signs near the intersection in question and the investigating officer testified that a safe speed under the prevailing conditions would have been a maximum of 45 miles per hour. It is conceded by defendants that traffic on Highway 659 usually had the right of way over traffic on Funderburk Avenue, although there were no controls at the intersection. Furthermore, the two automobiles were approaching the intersection in such a manner that Mr. Landry’s automobile was approaching from the right. Therefore, the Landry automobile was afforded the right of way both by local custom and by the general statutory rules for uncontrolled intersections. Just before the wreck, the Ostheimer vehicle had been driven into the intersection so that it blocked the progress of the Landry automobile. Landry testified that he swerved sharply to the left to avoid a collision, as soon as he realized that Ostheimer was not going to stop, but was going to continue in such a fashion as to block his forward course. He also stated that he stepped on his brakes at about the same time as his car struck Ostheimer’s car. The police officer who testified concerning the accident, stated that it occurred at a point at, or near, the centerline of Highway 659, the other testimony in the record indicates that the Ostheimer car which was struck was a two door station wagon and was hit near the center post or at the center of the back right door. The Ostheimer vehicle was knocked to the right and forward along Funderburk Avenue until it ran into a ditch some forty feet from the point of impact. Landry’s car was thrown sideways in such a manner that it faced in an easterly direction on or along Funderburk Avenue and was across Highway 659 at a point of approximately 35 feet from the point of collision.
Defendants attempted to prove that the Landry car was being driven at a high rate of speed at the time of the wreck. The record, as a whole, does not support this contention. Even defendant, William A. Ostheimer stated that it was difficult for him to judge the speed of the Landry car and that he would not accuse Landry of speeding. In addition, it is noted that Ostheimer stated that he saw Landry’s car approaching from the right for the first time when the car which he was driving was approximately thirty feet from the intersection. He saw it again, when he glanced to his right and saw the Landry car about a foot from him before the crash. He stated that he had thought that the Landry car was about 70 yards from the intersection when he first observed it.
Miss Ann Kleisch, a guest passenger in the Ostheimer car was thrown from the car and sustained painful bruises and abrasions. Mr. Landry sustained relatively minor injuries, but Mrs. Landry, the plaintiff herein, received serious injuries, which will be more fully discussed hereinafter.
This court is of the opinion that the facts, as set forth above indicate that William A. Ostheimer was negligent. He was approaching an intersection at a slow rate of speed and observed a car being driven towards the intersection from his right. Without again observing the approaching car, Ostheimer proceeded to drive on into the intersection and glanced at the other car just before it struck his car. This casual observance of the facts in question and Ostheimer’s actions in connection with the accident definitely constituted negligence. The fact that he was able to get *500 into the opposite lane of the highway before being struck does not minimize his negligence.
Conversely, Landry was traveling at a reasonable rate upon a favored thoroughfare. He noticed Ostheimer’s car approaching at approximately 25 miles per hour from his left. He was justified in assuming that this car would be stopped before it entered the intersection. He then glanced to his right to make certain that no other traffic was approaching on Fund-erburk Avenue. When he glanced back he realized that his assumption was not correct and he turned his car sharply to his left in an attempt to avoid the collision. He also slammed on his brakes. The point of collision was at or near the center of the highway.
Under these circumstances, it is felt that Landry had the right to expect Ostheimer to honor his right of way. Furthermore, when Landry realized that Ostheimer was not going to stop it was too late for Landry to do more than he did; that is, swerved to the left and attempt to put on his brakes.
Defendants have failed to prove that Landry was in anyway negligent or reckless in driving along the newly paved Highway 659. Although the shoulders to the highway had not been completed, and caution signs were probably posted at intervals along the highway, it was the uncontra-dicted testimony of the investigating officer that a car could travel up to 45 miles per hour in safety under the prevailing conditions. Ostheimer did not testify that he thought he had the right af way because the highway was under construction, nor did he testify that he believed Landry would be traveling slowly because the highway shoulders were not completed. Therefore, it is felt that the defendants have failed to sustain the burden of proving contributory negligence on the part of Tanile J. Landry.
For this reason a finding on the status of Mrs. Landry regarding whether or not she was a guest passenger would avail nothing. Mr. Landry was not negligent and therefore there is nothing to impute to Mrs. Landry.
The defendants have raised this question on appeal but in view of our finding that Landry was free of negligence the issue of imputation of Mrs. Landry’s alleged negligence is therefore moot.
Defendants claim that Mrs. Landry was independently negligent. We fail to find any negligence on Mrs. Landry’s part whatsoever. The general rule is that a guest is not held to the same degree of care regarding lookout as is the host driver, and a guest is not required to keep a constant lookout. There was nothing in the action of the driver of either vehicle which would have required of Mrs. Landry the duty of either warning her host driver to protesting any action on his part since it was not shown that he was in any way driving his vehicle in a dangerous or reckless manner.
The question of quantum is now at issue. Defendants contend that the trial court’s award herein is excessive. A concise review of plaintiff’s injuries and the treatments given for them is now in order.
Plaintiff received several injuries in the wreck. She received a cut near the corner of her right eye. She also received a comminuted fracture of the left humerus and a comminuted fracture of the radius of the right wrist. In addition the 5th, 6th, 7th and 8th ribs on Mrs. Landry’s left side were broken. She also had a “mosaic bruise of her right knee.” Lastly, Mrs. Landry had sustained a concussion in the wreck.
The following quotation from Mrs. Landry’s attending physicians’ testimony gives a fairly concise review of the required treatment and the results thereof:
“She was properly splinted, given sedation for pain and the right wrist was reduced as a closed reduction. The laceration of her eyelid was su *501 tured and the left humerus or left arm was operated upon in an open reduction fashion with application of a type ■of metal device or pin to bridge the fractured site. The right knee which was severely bruised was splinted and •did not require any operative reduction, because there was no fracture at that site, just a bruised knee. Hospital course was adequate. She didn’t develop any pulmonary complication from the fractured ribs that we thought she might and eventually made a satisfactory recovery enough to allow removal of suture on the left arm and from the eyebrow injury and she was discharged on the 9th of December, 1958.
“She was followed as an out patient after that in my office with changes of the cast, x-ray of the extremities and the chest, and over a period of time it was noted that the fracture in the left humerus was not healing adequately and calcium was not being deposited at the fracture site, so on the basis of this a consultation was obtained with Dr. Unkauf for the possibility of bone graft. He concurred that this was indicated, and this procedure was carried out on second admission to Terrebonne General on 3-16-59. The procedure at this time was to expose the fracture site in the left arm and bone chips were removed from the region of the left hip and these were placed at the fracture site in the proper manner to cause healing. The arm was suitably incorporated in plaster, and she was again treated as an out patient and in the same manner, that is, x-rays and changes of cast. She failed to heal this fracture site even with the application of this type of support. This was verified by the production of pain and the fact there was motion at the fracture site even though there was a metal pin holding in position. It still did not heal adequately. On the basis of this, that is, the clinical finding of motion at the fracture site plus pain plus X-ray findings of nonunion she was re-operated on. This third admission was 3-8-60. At the time instead of application of bone chips a 3 to 4 inch bone graft was removed from the anterior aspect of the left shin bone and this was securely screwed in position on both sides of the fracture site in the arm, and the arm was again incorporated in plaster as was the left leg from which the graft was taken. She was subsequently discharged and has been managed as an out patient up to this time.
“The most recent film of this patient of her left humerus was on 5-18-60, and the clinical interpretation of this is that it seems to be depositing calcium very well, the screws are well fitted, no absorption of bone graft, wound is well healed, full motion of wrist, limited motion in elbow which is expected from prolonged immobilization, wound of left leg is healed but still has some degree of swelling which is expected, the right knee injury has healed fairly well. She does have arthritic changes incident to her age, but the initial trauma has subsided without residual in the right knee. The rib fractures have all healed without incident. Lacerations of the eye healed without deformity. The only remaining thing that has not healed adequately for use is her left arm.”
The doctors who testified stated that Mrs. Landry would also have a 10% to 25% permanent disability of her left arm and an arthritic condition disabling to her right hand as a result of her injuries.
Parenthetically it should be noted that the attending physician testified that Mrs. Landry would require approximately one more year of physiotherapy and other treatments after the date of the trial.
In view of the serious nature of Mrs. Landry’s injuries, the excessive pain and *502 inconvenience which she undoubtedly suffered, the several operations which she has been subjected to with their accompanying pain and scars, the future physiotherapy and treatments to be required, and the permanently disabling features of her wrist injury and the injury to her humerus, it is felt that the award of $20,000.00 is not excessive in this case.
Cases on quantum must be considered in light of the evidence in the record which is under consideration. We feel that the record herein substantiates the judgment. Accordingly, the judgment of the trial court is affirmed in its entirety. The defendants are ordered to pay all costs of this appeal.
Affirmed.