169 So.2d 276 (1964)
Mrs. Georgie Thibodaux FASLUND et al., Plaintiffs-Appellees,
v.
Robert KENDRICK et al., Defendant-Appellant.
No. 6230.
Court of Appeal of Louisiana, First Circuit.
November 16, 1964.
*277 Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, John M. Currier, John E. Jackson, Henry J. Roberts, Jr., Asst. Attys. Gen., Baton Rouge, for appellant.
Caillouet & Wise, Thibodaux, for appellees.
Before, ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
On December 15, 1958, Mrs. Clarence Faslund was driving the family automobile on an errand for her husband. She was traveling East on Louisiana Highway No. 20 at an estimated speed of forty-five miles per hour and at the time of the accident was approximately two miles West of Schriever, Louisiana, in Terrebonne Parish.
Mr. Robert Kendrick was traveling West on Highway No. 20, driving his red and white Metropolitan. Mr. Kendrick was an employee of the Department of Public Works of the State of Louisiana and at the time of the accident was performing work for his employer. This was admitted by Mr. Kendrick in his written answer and was stipulated as a fact by counsel at the commencement of the trial on the merits.
Highway No. 20 at the point where the collision occurred is a straight and level two-lane asphalt highway twenty-four feet wide. Shell shoulders three feet in width border the road on both sides and a canal parallels the shoulder on the south side. The accident occurred at approximately 4:00 P.M. on a cold but perfectly clear day.
Unfortunately, Mr. Kendrick has no recollection of any event from the time he turned onto Highway No. 20 until he awoke in the hospital. There were no eye witnesses to the accident and the only direct evidence as to how it occurred is the testimony of Mrs. Faslund.
Mrs. Faslund testified that when the Kendrick vehicle was only a short distance from her it began to weave from one lane to the other for no apparent reason. As the Kendrick vehicle drew closer, Mrs. Faslund took her foot off the accelerator, slowing her vehicle to about forty miles per hour.
The Kendrick vehicle, however, did not return to its proper lane, but continued to weave and sway. When it became apparent that the Kendrick vehicle was wandering aimlessly over both lanes of the road and that if Mrs. Faslund continued in her lane, a collision would certainly occur, she cut to her left in order to pass the Kendrick vehicle which was by this time in her lane. Mr. Kendrick, about that moment, determined to return to his proper lane, with disastrous results. The two vehicles collided near the center of the road, the right front corner of each bearing the brunt of the impact. Mrs. Faslund further testified she had very little time to think and that the accident happened suddenly.
Mrs. Faslund suffered deep lacerations of the right forehead, eyebrow and scalp; one, nearly two inches long, extending down to the skull. X-rays revealed a comminuted fracture of the right radius and a fracture of the right ulna. There were *278 generalized contusions and abrasions and a tenderness in the abdomen. Mrs. Faslund was in an extremely nervous state bordering on hysteria when she was treated in the emergency room of St. Joseph's Hospital. An attempt to set the arm by closed reduction proved unsuccessful and the long-arm cast which had been applied was removed so that the arm could be set surgically.
This surgical procedure was performed on the second day after the accident and several incisions were made on the forearm, wrist and elbow. Pins were inserted through the marrow cavity of the ulna and radius to effect the reduction and the arm was returned to a long-arm cast. Mrs. Faslund was in the hospital for eight days on this occasion and received narcotics for the first three days
From December 23 until March 20, Mrs. Faslund was in the long-arm cast and took tranquilizers and Phenobarbital. On March 20, Mrs. Faslund re-entered the hospital and under a general anesthetic the case was removed. It was discovered that the fracture was not healing. Treatment was delayed from March 20 until May, at which time X-rays revealed some callus developing. Mrs. Faslund was returned to a long-arm cast and remained so until July.
In July the cast was removed and an infection developed around the intramedullary pin in the ulna. The pin was surgically removed during a two day hospital confinement in August.
Since that time treatment consisted of exercise, sedatives and tranquilizers constantly. The injury was a painful one and has resulted in an estimated 35-40% permanent disability of the right arm. There is an even chance that the pin in the radius will have to be removed surgically at a later date.
Mrs. Faslund is claiming damages for the above-detailed injuries and for mental trauma as well. With reference to this latter demand she was examined by Dr. Charles R. Smith and Dr. Alvin Cohen, both qualified psychiatrists, on one occasion each. Neither doctor was called to testify but their detailed written reports were admitted into evidence by stipulation. Dr. Smith found Mrs. Faslund completely preoccupied with the circumstances of the accident and a relation of her present difficulties to that unfortunate event. There was a withdrawal from people and activities. Dr. Smith felt, based on the patient's completely negative history, that there was reason to believe an anxiety state existed prior to the accident and that it was simply aggravated by the accident.
Dr. Cohen's examination of Mrs. Faslund revealed that she was extremely anxious and tense, though oriented in all areas and not overtly psychotic. He found Mrs. Faslund to be "* * * completely and totally absorbed with anxiety about her accident and resulting fear. She relives the accident often during the day." Dr. Cohen believed this condition to have been precipitated by the accident and that Mrs. Faslund was in need of psychotherapy.
Dr. Joseph L. Powell treated Mrs. Faslund for her injuries from the beginning. He indicated that the nervous condition, which he diagnosed as a tension neurosis, would continue without significant improvement.
The trial court, to quote briefly from the lower court's written reasons for judgment, "* * * was not too impressed with the fact that Mrs. Faslund was a severe mental case. She appeared to be and testified as a competent, intelligent, well-balanced person."
Plaintiff introduced the testimony of her mother and husband which tended to support the expert medical testimony to the effect that Mrs. Faslund was greatly withdrawn from her family and no longer participated in community affairs.
Though there were originally four suits growing out of this automobile accident, the only one before this court is brought by Clarence Faslund and his wife against Robert *279 Kendrick and his employer, the State of Louisiana, for personal injury, medical expense and property damage. Judgment was rendered by the trial court in favor of the plaintiffs, allowing Mrs. Faslund $20,000.00 for her injuries, pain and suffering. Mr. Faslund received a favorable judgment for an additional $968.20 consisting of $50.00 stipulated loss to the Faslund automobile; $557.50 for professional services rendered by Dr. Powell to date of trial; and $360.70 stipulated hospital charges. The State of Louisiana, but not Kendrick, has appealed, and plaintiffs have answered the appeal praying for an increase in the amount of the award in their favor.
The trial court had no difficulty finding as a fact that this accident was caused solely through the negligence of Robert Kendrick and that Mrs. Faslund was entirely free of contributory negligence. With these findings we must agree.
Kendrick created a terrible hazard on the highway, weaving from side to side in the face of oncoming traffic. That this is what happened is substantiated by the testimony of Eugene Benoit, a disinterested witness. Mr. Benoit testified that he was forced off Highway No. 20 by the reckless weaving of the red and white Metropolitan. Shortly thereafter, while returning from his errand, he came upon the accident and recognized the Kendrick auto as the one that had nearly hit him earlier.
Counsel for the State suggests that Mrs. Faslund should have remained in her lane or cut to the right, or even stopped altogether and thereby avoided the accident. However, it cannot be said that any of these maneuvers would have avoided the accident. Nor can it be said that Mrs. Faslund, who was faced with a sudden emergency not of her own creation, was negligent in turning to the left in order to avoid the oncoming peril. Just which direction is the proper legal direction to turn when faced with an oncoming vehicle which is completely out of control and which is as likely to veer to the left as to the right at any moment, and may even continue on a straight path?
The following language in Lacy v. Lucky, 19 La.App. 743, 140 So. 857, is pertinent:
"* * * But the driver of an automobile, faced with a sudden emergency which he did not create and for which he is not responsible, is only required to exercise reasonable care governed by the circumstances then confronting him, in determining a method of escape from a threatened danger. He does not have time to deliberate, so, even if there is more than one way of escape, and that he chooses the most hazardous, he is not guilty of contributory negligence in so doing."
This court cannot find merit in the argument strongly relied on by counsel for the State that the physical facts contradict the testimony of Mrs. Faslund. The accident occurred in the approximate center of the highway, the right front corner of both vehicles colliding. We find this entirely consistent with Mrs. Faslund's testimony that as she swerved left out of her proper lane, Kendrick swerved right, back into his proper lane. Trooper Raymond Boudreaux, who investigated the scene of the accident, indicated that it appeared that both cars were attempting to avoid hitting the other. We cannot find any evidence in the record to contradict Mrs. Faslund's testimony and it is, therefore, accepted as true.
Plaintiffs, prior to trial, with the consent of the court and without objection, amended their demands so as to include an item of $10,000.00 for "mental anguish and pain, emotional and mental distrubance and anxiety". Defendants were not prejudiced thereby and had ample time prior to trial on the merits to prepare a defense to this demand. Mrs. Faslund was, at the request of the State of Louisiana, examined by Dr. Charles R. Smith whose findings have already been discussed. This first amendment did change the substance of the demand but *280 the defendant was not prejudiced and did not object.
After trial of the case the plaintiffs by rule sought to amend the pleadings a second time in order to increase the demand of the first amending petition from $10,000.00 to $30,000.00.
Permission to amend on this occasion was denied by the lower court on the theory that it would "alter the substance of the demand". Since the adoption of LSA-C.C.P. Article 1151, the whole matter is now left entirely to the discretion of the trial court. In this regard, we note the comment to LSA-C.C.P. Article 1151 states as follows:
"This article effects a change in the procedural law of Louisiana, but it provides a simple, workable rule as to amendments after the filing of answer within the discretion of the trial judge, as is provided under the federal practice and under all of the newer rules of civil procedure in other American jurisdictions.
"Probably the most unworkable rules contained in the 1870 Code of Practice are Arts. 419 and 420 relating to the amendment of the petition and answer. The concepts of `joinder of issue' and `altering the substance of the demand' are so nebulous and impractical as to make any rules dependent upon them wholly unworkable. On this subject see McMahon 43, 44, 95, and 96 (1956 Supp.). For these reasons, the above article leaves the decision to the discretion of the trial judge who is in the best position to determine the matter." (Emphasis added)
The second amendment was unnecessary, however, as the judgment rendered was within the allegations of the original petition as initially amended. The judgment is not manifestly erroneous so as to justify this court in altering it. The trial judge was not "too impressed" with Mrs. Faslund as a mental patient, but he evidently did give consideration to her tension and nervousness and its effects on her personality in fixing the award.
The physical injuries sustained by Mrs. Faslund and the treatment required were not so severe as those suffered by and required of Mrs. Landry in the case of Landry v. Ostheimer, La.App., 140 So.2d 497, which is relied on by the plaintiffs. In the Landry case the injuries consisted of comminuted fractures of the left humerus and right wrist resulting in permanent disability of both; four broken ribs; a mosaic bruise on the right knee; a cut near the eye; and a concussion. Treatment consisted of several bone grafts, casts and hospitalization. $20,000.00 was awarded Mrs. Landry and, therefore, insofar as physical injuries are concerned, an award of less than that amount in the instant case would be proper.
As to the mental trauma suffered by the plaintiff, the court finds that she is entitled to an award of something substantially under $12,000.00 as was awarded to Mrs. Humphries in the case of Humphries v. Delta Fire and Casualty Company, La.App., 116 So.2d 130 and less than the $20,000.00 received by Mrs. Allen in Allen v. Indemnity Insurance Co. of North America, La. App., 137 So.2d 110. In the Allen case the plaintiff underwent prolonged treatment and hospitalization for her mental problems. In the Humphries case, Mrs. Humphries suffered physical pain with objective symptoms as a result of her conversion neurosis. Other objective symptoms of her mental trauma included "* * * her rigid and tense body posture, her shaky and tremulous limbs and hands, her face quivering with tics and twitches * * *".
Mrs. Faslund has undergone no treatment for mental trauma other than to take the medications prescribed by Dr. Powell. She has no visible twitching or objective physical pain as a result of the tension neurosis. However, it cannot be denied that she has suffered mental trauma *281 with adverse effects on her ability to associate with people and take part in family activities.
Lumping the physical and mental injuries together as did the trial judge, we believe that $20,000.00 is adequate.
We find that the award of the lower court to Mr. Faslund for special damages should be increased by $200.00, representing the cost of drugs required by Mrs. Faslund to date of trial.
Mr. Faslund is also claiming reimbursement of $1,332.00 for money paid to a maid at the rate of $3.00 per day, four days per week for 111 weeks. There was no showing, however, that the maid was needed for that period of time. On the contrary, it would appear that as Mrs. Faslund's condition improved she would have needed the maid less frequently. We believe that an award to Mr. Faslund of $468.00 representing $12.00 per week for 39 weeks would be proper. This would cover the period from the accident until Mrs. Faslund's arm was removed from the cast in July.
The claim for the cost of future psychiatric treatment in a minimum amount of $1,560.00 must be denied as speculative.
The judgment of the trial court awarding Mrs. Faslund $20,000.00 for her injuries, both physical and mental, is affirmed. The award of special damages to Mr. Faslund as head and master of the community is increased by the sum of $668.00, resulting in a total award to him of $1,635.20.
Affirmed and amended.