HOOD, Judge.
Mr. and Mrs. Jan Barlow, Jr., instituted this suit for damages for personal injuries allegedly sustained by Mrs. Barlow as the result of an automobile accident. The defendants are Odis O. Plummer and his insurer, Southern General Insurance Company. Judgment on the merits was rendered by the trial court in favor of plaintiffs, and defendants have appealed.
The evidence shows that on March 3, 1963, as Mr. and Mrs. Barlow and their two children were riding in their family car on a public highway, their car was struck in the rear by an automobile being driven by defendant Plummer. Plaintiffs contend that as a result of that accident Mrs. Barlow sustained a whiplash type injury to her neck and a flare-up of a pre-existing emotional or mental illness.
The trial judge awarded Mrs. Barlow the aggregate sum of $7000.00 as general damages for all of her injuries, pointing out in his reasons for judgment that he was awarding her $2000.00 for the neck injury, and the additional sum of $5000.00 for the flare-up of her pre-existing psychoneurotic condition.
Defendants admit liability, and the sole issue presented on this appeal relates to quantum. Defendants contend that the award of general damages made to Mrs. Barlow is excessive and should be reduced. Plaintiffs contend that the judgment appealed from should be affirmed.
*323 Mrs. Barlow testified that she was not in pain immediately after the accident occurred, but that about an hour later the right side of her face began to feel numb and she began to suffer pain in her neck. Later that day she consulted Dr. John D. Brooks, her family doctor, and he gave her some muscle relaxants. She saw him again about two months later, at which time he referred her to an orthopedic surgeon for examination. Thereafter Dr. Brooks prescribed a neck traction device for her to use in her home, but she refused to use it because she said it choked her. Upon Dr. Brooks’ recommendation, however, she submitted to six physiotherapy treatments which were given to her at a local hospital, two such treatments being given per day for a total of three days. She states that she was “much relieved” after these treatments, and that her neck has not pained her since, except that it bothers her occasionally when she irons or sews for extended periods of time.
Dr. Brooks, a general practitioner, concluded from the examination made by him on March 3, 1963, that Mrs. Barlow had sustained a traumatic cervical myositis as a result of the accident, that she would have “soreness in the neck from one to two weeks” after the accident, but that she would have no permanent residuals or impairment. He examined her again on May 9, about two months after the accident, but he was unable to find any objective signs of neck injury at that time. She complained of a “nagging” pain in her neck, however, and Dr. Brooks found subjective complaints of pain on pressure and upon extreme motion of the neck. Because of her continued complaints, he referred her to Dr. Norman P. Morin, an orthopedic surgeon, and following an examination by that orthopedist Dr. Brooks prescribed a cervical traction device for her to use in her home. Also, on June 18, 1963, he arranged for Mrs. Barlow to obtain physiotherapy treatments as an outpatient in a local hospital. Mrs. Barlow did not return to Dr. Brooks for any further treatment after the last mentioned date, but she did inform him later by telephone that she “felt much, much better, much improved.”
Dr. Norman P. Morin examined Mrs. Barlow on June 4, 1963, and reported that his findings “are in keeping with the mild residuals of a cervical myofascial strain sustained in March, 1963, and from which this patient has not yet completely recovered.” He felt that she should completely recover with no residual disability in six or eight weeks from the time of that examination. Following that examination he reported that Mrs. Barlow would benefit by two or three weeks of supervised physiotherapy as an outpatient in a hospital, but he pointed out that such treatment “is by no means absolutely necessary as it is felt that under normal circumstances without benefit of treatment she should completely recover with no residual disability within the next six to eight weeks.”
The evidence convinces us that as a result of the above mentioned automobile accident Mrs. Barlow sustained a mild cervical myofascial strain, which caused her to suffer mild to moderate pain for a period of not more than two months, and thereafter she suffered only mild pain intermittently for about three months. We think she has fully recovered from the neck injury, without any residual disability or symptoms.
We turn now to Mrs. Barlow’s claim that as a result of the accident she sustained an injury consisting of the aggravation of a pre-existing mental condition. Mrs. Barlow testified that about two weeks after the accident occurred she became depressed, unhappy and impatient, and she became aggravated easily. She was examined by Dr. Gilíes R. Morin, a psychiatrist, on May 15, 1963, and she was treated by him eight times thereafter, the last treatment having been administered on November 6, 1963. She testified that Dr. Morin gave her some mild tranquilizers, and she began to improve. She stated that she had fully recovered by the time he discharged her in November, that “I don’t have any anxieties any more. I am pretty happy,” and “I now *324 feel that I’ve got a happy marriage. I am getting along well, the children are happy.” Mr. Barlow confirmed the testimony of his wife as to the nature of her mental disturbance, and he testified that after the middle or latter part of the summer of 1963, Mrs. Barlow’s neurotic condition had improved considerably. He stated that at the time of the trial, which took place in December, 1963, “We are at a state even of higher state of happiness and congeniality than we were prior to that.”
Mrs. Barlow had suffered periodically from an emotional and mental illness for several years before the accident occurred. These periods of illness were marked by deep depression and by an extreme hostility toward her husband. In 1957 she divorced her husband because of hostility toward and incompatibility with him, and then she remarried him about one year later. In 1960 she was confined for eight weeks in John Sealy Hospital, in Galveston, because of mental and emotional disturbances, and during that time she was given electric shock treatments. She and her husband testified, however, that for a period of about one year immediately prior to the accident they had been getting along well, but that about two weeks after the accident some of her old symptoms of depression and hostility toward her husband returned. The evidence also shows that she had suffered from severe migraine headaches since she was 17 years of age, but that she began taking a new drug in December, 1962, about three months before the accident, which has relieved her from these headaches. She has had no migraine headaches since the accident.
Dr. Morin, the psychiatrist, examined Mrs. Barlow initially on May 15, 1963, and found that she was depressed and was extremely hostile toward her husband. He concluded that she was a “pseudoneurotic schizophrenic,” a condition which existed prior to the accident, and that “it is quite probable that the accident of March 3, 1963, triggered off a recurrence of the underlying illness.” He felt that she needed treatment, and he treated her thereafter for a period of a little more than five months. He also saw Mr. Barlow during the same period, and he testified that, “as we continued to see both of them and as the husband began to understand a little bit more that this was an illness that she suffered from, and she began to understand herself a little bit more, the marriage gradually became more stable and at the last two appointments (October 2 and November 6, 1963), she felt a whole lot more comfortable and I feel had reached the point prior to the accident.” He also stated that her prognosis was good, although she still has the underlying pseudoneurotic schizophrenic pattern of existence which pre-existed the accident.
Mrs. Barlow was 29 years of age when the accident occurred. She has two children, who were eight and seven years of age at that time. Prior to sustaining the injuries complained of here, she taught a Sunday School class, was a Bluebird leader, a homeroom mother, she did PTA work and she belonged to a women’s organization. She stated that she continued all of these activities after the accident occurred, except that she quit teaching Sunday School and she dreaded each time a meeting of the Bluebird girls came around. She conceded that on September 13, 1963, while she was being treated by the psychiatrist, she was hospitalized and underwent rectal surgery, which operation had no relationship at all to the automobile accident. We note, too, that the treating psychiatrist did not begin administering anti-depressant drugs to her until September, 1963, the same month she underwent surgery, and that he found that she had made a full recovery from her mental or neurotic condition by October 2, 1963, or within a month after these drugs were administered. Mrs. Barlow testified that she has continued to do her housework, including cooking, washing, cleaning and making up beds, after the accident as she did before, except for the period when she was *325 recuperating from the rectal surgery performed in September.
We agree with the trial judge in his conclusion that the accident triggered a recurrence of Mrs. Barlow’s underlying mental illness, and caused her to suffer periods of anxiety, depression, nervousness, loss of sleep and episodes of mental pain and suffering. We find, however, that the emotional or mental disturbance so triggered was not of such a nature that it disabled Mrs. Barlow or caused her any great suffering. Only seven or eight visits to her treating psychiatrist over a period of five or six months were required to completely restore her to her former condition and a full recovery was obtained even though she underwent serious surgery not connected with the accident during her period of recovery, and at the same time this lawsuit was pending. With reference to her recovery pending this litigation, the psychiatrist stated that “She is one of the few patients that this has occurred, that before the settlement she feels better.” She was never hospitalized, it was not necessary to administer shock treatments to her, and she was not bedridden or disabled. The only activity which she apparently curtailed was teaching her Sunday School class, but her husband’s testimony indicates that this occurred not so much because of disability but because, “She got very unhappy with her Sunday School and with our church.”
In the assessment of damages “much discretion” must be left to the trial judge. LSA-C.C. art. 1934(3). The reviewing appellate court, however, should review all of the facts and circumstances on which the trial court based the quantum of the award to determine whether there has been an abuse of the discretion which is vested in the trial court. The appellate court also should consider the amounts of awards in similar cases to determine whether the award is so excessive or inadequate as to constitute an abuse of discretion. The function of the reviewing court is simply to determine whether the trial court award is manifestly excessive or insufficient under all of the circumstances of the case. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So. 2d 64.
In the instant suit the trial judge has reasoned that Mrs. Barlow is entitled to an award of $2000.00 for the neck injury which she sustained. We think that such an award, if considered alone, would be allowed to stand as being within the range of the “much discretion” which is vested in the trial court.
Insofar as the aggravation of Mrs. Barlow’s pre-existing emotional and mental condition is concerned, the trial judge concluded that an award of the additional sum of $5000.00 was justified. Plaintiffs, in support of that award, have referred us to three cases where the injuries included emotional and mental disturbances and where the awards were greater than that made in this suit. See Humphries v. Delta Fire & Casualty Company, 116 So.2d 130 (La.App. 1st Cir. 1959) ; Allen v. Indemnity Insurance Co. of North America, 137 So.2d 110 (La.App. 3d Cir. 1962); and Faslund v. Kendrick, 169 So.2d 276 (La.App. 1st Cir. 1964). The injuries in each of those cases were so much more severe than that sustained by Mrs. Barlow in this suit that we do not consider those cases to be apposite.
Other cases which we have considered, and which we think involve injuries more similar to those sustained by Mrs. Barlow, are: Dooner v. Parish Cab Company, 147 So.2d 231 (La.App. 4th Cir. 1962); Le Jeune v. United States Fidelity & Guaranty Co., 105 So.2d 327 (La.App. 1st Cir. 1958); and Ford v. State Farm Mutual Automobile Insurance Co., 139 So.2d 798 (La.App. 2d Cir. 1962). In each of these cases the award was lower than that awarded here, although we think the injury in the Le Jeune case, at least, was considerably more serious than that sustained by Mrs. Barlow.
*326 Our conclusion is that the award made to Mrs. Barlow in this case is manifestly excessive, and is out of proportion to awards made in similar cases. We have decided that the aggregate award of $7000.00 made to Mrs. Barlow must he reduced to $4000.00.
For the reasons herein set out, that portion of the judgment appealed from which decrees that certain items of expense are to be taxed as costs of court, including expert witness fees and depositions, is hereby affirmed. The remaining portions of the judgment appealed from, however, are amended and recast to read as follows:
It is therefore ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Mrs. Carole Barlow, and against the defendants, Odis O. Plummer and Southern General Insurance Company, jointly, severally and in solido in the amount of $4000.00, with legal interest thereon from date of judicial demand until paid and all costs of these proceedings.
It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Jan Barlow, Jr., and against the defendants, Odis O. Plummer and Southern General Insurance Company, jointly, severally and in solidio in the amount of $548.43, with legal interest thereon from date of judicial demand until paid, and all costs of these proceedings.
The judgment, as herein amended and recast, is affirmed. The costs of this appeal are assessed to plaintiffs-appellees.
Amended and affirmed.
TATE, J., concurs and assigns written reasons.