JOHNSON, Judge.
The plaintiffs are husband and wife. Mrs. Gloria Caracci was injured in an automobile accident and she has sued to collect damages for her personal injuries. Antonio Caracci has sued the defendants for and on behalf of his minor daughter, Gina Caracci, for personal injuries received in the accident and to collect special damages for himself in the amounts paid and to be paid as doctor and medical bills and automobile property damage. The defendants are Christiana Brothers Poultry Company of Gretna, Inc., (hereinafter called Christiana Brothers), its public liability insurer, Marquette Casualty Company and Walter Glocum, its truck driver. On motion of the Louisiana Commissioner of Insurance, the Nineteenth Judicial District Court issued an order placing said insurance company in rehabilitation and enjoining all further proceedings and actions against that insurance company. The Twenty-Fourth Judicial District Court rendered judgment in favor of plaintiffs and against Christiana Brothers and Walter Glocum. Christiana Brothers only has appealed.
About 11:30 a. m., on May 23, 1963, plaintiff Mrs. Caracci, accompanied by her two year old daughter, Gina, was driving from Kenner toward New Orleans on the Airline Highway. At the intersection of Turnbull Avenue, traffic on the Airline Highway stopped in obedience to a red traffic light. There was one car ahead of Mrs. Caracci in the middle lane and the truck of Christiana Brothers, driven by defendant Glocum, was in line behind her. When the light turned green the first car and Mrs. Caracci moved forward slowly. For some unexplained reason, the first car stopped and without hitting the first car Mrs. Caracci stopped before Mrs. Caracci’s car had passed the traffic light in the center of the intersection. The truck did not stop. It collided with the rear end of Mrs. Caracci’s Ford with no damage to the truck and from the pictures with light damage to the Ford. Both vehicles remained stopped in the intersection and the police officer found them in that position with the front end of the truck still touching the back end of the Caracci Ford automobile. From the evidence we find that Mrs. Caracci was not guilty of any negligence; that the driver of defendant’s truck was negligent and that his negligence was the proximate cause of the accident and resultant dajnages.
Mrs. Caracci said she got out of her car and took the baby girl, who was screaming, to a nearby service station to bathe the baby’s face with water. Mrs. Caracci said that while in the service station she began to feel pain in her neck, shoulders and back. After the police came and authorized moving the cars, she drove back to *511 her home in Kenner where she quieted the little girl and then she went to bed.
The next day she went to Dr. Rabin’s office but he was not in and she saw Dr. Romano, an associate, who gave her some pills. She said she got worse and went to see Dr. Rabin on May 29th. Dr. Rabin had X-rays of the back and cervical regions made. He gave her a physical examination and found marked cervical muscle spasm and limitation of motion of the head. Neurological examination was negative. He found muscle spasm of the lumbar area with tenderness and limitation of motion of the back. He thought there was flattening of the lordoctic curve and no turning to point back in reversal of the curve. (If this condition did exist then, later X-rays showed the spine to be normal in that respect). Straight leg raising was positive. Flexion of the thighs caused pain in lower lumbar region. The reflexes were normal. Mrs. Caracci complained to the doctor of being unable to sleep, nervousness and headaches. Dr. Rabin gave her the usual pain relief medicine and many treatments by ultrasonic therapy. On June 4th he prescribed a Thomas collar which she wore until July 1, when it was discarded. Frequent therapy to the neck and back was applied until June 29th. She still complained but at that time he failed to find any objective symptoms referable to her lower back. She had full range of motion but complained of some pain at the extremes of motion. The doctor felt she had enough therapy on her back. There was still some muscle spasm at the neck with limited mobility. Therapy of the neck was continued to September 16th. At that time she still complained of neck pain to the doctor but he could find nothing wrong and discharged her as fully cured.
Mrs. Caracci was examined by Dr. So-boloff, another orthopedic surgeon, on August 23, 1963. Examination of the back was negative. He did find some tightness on extremes of neck motion on the left side. He thought the back was fully recovered but felt that a few more weeks of therapy of the neck should resolve that last bit of tightness in the neck.
Dr. George Gernon Brown examined her and made X-rays of neck and back on April 7, 1964. He found the spine revealed the normal cervical lordosis, no muscle spasm, and with excellent range of motion of the neck. Mrs. Caracci did complain of pain on motion and pressure but he thought there was nothing wrong with her.
Mrs. Caracci was sent to Dr. Charles R. Smith, a psychiatrist, on October 18, 1963, by her attorney. She visited Dr. Smith 38 times through August, 1964, and the doctor said he spent from one hour to one hour and a half with her on each visit. Based on the history given by Mrs. Caracci and her husband and the doctor’s own examinations, he testified that Mrs. Caracci had a difficult early life merely because of the death of her mother, when plaintiff was about 12 years old, after which she was transferred from person to person but mostly lived with an older sister. The doctor thinks her life before the accident had been quite secluded, despondent and full of frustrations, including much unhappiness since her marriage, though she did function adequately in her daily duties. After many visits and treatments the doctor has found that her continued complaints of aches and pains, nervousness, and sleeplessness are merely giving vent to pent-up feeling badly about things she had missed in life and in the belief that she has not had a fair deal and now wants one.
The doctor’s diagnosis of Mrs. Caracci’s condition “ * * * was that of a traumatic anxiety reaction related insofar as I could see to the stress inflicted upon an individual in whom there was a somewhat tenuous balance within her personality and that there had been set off a kind of chain reaction of fear and a number of physical manifestations of her anxiety which perpetuated her original complaints, that is, of the neck and back injury.” After continued treatments for some time the doctor said: “* * * she was responding to *512 treatment in minimal to moderate degree and that she shows less fear. She is less frightened in some ways, however, she continues to be extremely sensitive to noises, has phobic reactions to situations that remove her from her home and to a large degree she remains withdrawn and isolated. Sleep disturbances and complaints of headaches continue with some improvement.”
After having examined and treated her some 38 times, Dr. Smith said he thought she would need about two or three years continuous treatment of once or twice weekly. He said this would entail something over $6,000.00 in additional fees. However, it is noted that Dr. Smith had not seen her between August, 1964, and September, 1965, and then twice in January, 1966. He explains the long spaces of no treatments as being due to the fact that she became pregnant and gave birth to a baby in September, 1965. He did not make any explanation of why his manner of treatment could not be administered to a person who is pregnant. The crux of Dr. Smith’s conclusion is that this automobile accident triggered Mrs. Caracci’s pre-acci-dent frustrations to cause her to develop mental hallucinations of fear with imaginary pain and suffering to the extent that she is now classified as psychotic and suffering from what they call traumatic neurosis. He wound up his rather lengthy discussion by admitting, however, that desire for compensation is synonymous with traumatic neurosis.
Dr. Marvin Miller’s testimony was very much of the same nature and in the same language as that of Dr. Smith. Dr. Miller examined Mrs. Caracci twice, on January 28 and February 23, 1966, for periods of about 30 to 35 minutes each. He said she manifested a sense of profound neurotic reaction and also considerable depression, phobic and obsessive reactions, “ * * * as well as the binding of her anxiety and tensions in her body.” He thinks these “* * characterological problems may well have existed before the accident,” though according to her she had none of them. He said that: “In the matter of assessing the impact of trauma on the individual, the trauma, itself, has to be considered and in this woman’s case the amount of physical trauma that she sustained, as expressed in the opinions of the orthopedists, is not in keeping with the intensity of the psychological or the emotional response that she exhibited to us.”
We quote further from Dr. Miller’s testimony :
“In other words, if all we use are the data of the accident, it is — These are not efficient to explain why she is as upset as she is at this time. We have to look for data from the psychological realm in order to come up with some conclusions. The extent of her psychological disabilities then, cannot be explained by the extent of the actual physical trauma that she sustained. The only way to explain this, in my opinion, is to have to conclude that the psychological integrity of her personality and by integrity I mean the way it was put together and how it was functioning. That the integrity of her personality structure that was brought into the accident, was of a questionable sort and by questionable, I mean this; that there were either latent or dormant or sub-clinical psychological problems she was having up to the time of her experiencing the accident. The accident, then, can be seen as a trigger or as a point around which these present existing sub-clinical conflicts, problems, etc., could crystalize out.”
On the subject of the existence of mental problems before the accident, Mrs. Car-acci and her husband both testified that they had no marital problems in the sense of personal conflicts or clashes of opinions and no quarrels of any note or serious nature that were not settled in a very few minutes. Mr. Caracci did say that after the accident she was irritable and nervous and hard to please. Therefore, we can only conclude that there is also serious *513 question about the integrity of the complaints she made after the accident.
Mrs. Caracci testified at considerable length but she said very little about any continued pain and suffering after the medical doctors discharged her. She said that almost immediately after the accident and while she was in the service station bathing the face of her little daughter to quiet her she had great pain in her shoulders and back. Then she explained how she took her daughter in her arms and went out to the automobile to talk to the police officer who was there to investigate the accident. She made no complaint that the weight of the daughter in her arms increased her pain. The general history of whiplash type injuries, being mostly muscle strain, is that the pain and soreness actually do not follow immediately after the accident and only after some days does the trouble develop. We think that is the very reason Mrs. Caracci did not go to see Dr. Rabin (after she got some pills from Dr. Romano, who did not testify) until May 29, six days after the accident.
Here we have a young woman apparently in good physical health who had, comparatively speaking, a very minor automobile accident in which she received a rather mild or light jolt. It definitely was not severe. We have two well known medical doctors and orthopedic specialists who, by learning and years of experience, know about the type of physical injury this plaintiff suffered; they know about her complaints, which they heard from her; they know about the symptoms which they discovered for themselves by their physical examinations; they know what they saw and felt with their trained and sensitive hands, and from these sources their evaluation of her injuries was that she had completely recovered from them within a short period of four months. In our opinion this accident and the resulting injuries this plaintiff suffered cannot be reasonably calculated or expected to transform a normal person into a quivering psychopathic or neurotic personality. It is really astonishing that such a light jolt which she received is being pointed to as the basis which triggered existing rational tendencies into extremes of fear, emotional,, imaginary and disabling consequences.
The testimony of the psychiatrists in this-case is expressed in the specialized vocabulary and idioms that we read in all such cases. After describing all the fearful and disturbing mental processes, Dr. Smith expresses his diagnosis as quoted above.. However, it was developed on cross-examination that she was not a normal person to begin with, according to their opinions. The psychiatrists found out that she had considerable mental and personality problems with a difficult background before the accident, with previous dispositions of fear and complaints of various kinds. They say she was already aloof and non-communicative to the extent that she exhibited schizoid symptoms; that basically she is a fearful person and that her fearful disposition long preceded the accident. These doctors say that they have elicited information from her that gives them a true picture and a solid basis for their conclusions that her present mental troubles stem from inhibitions of early origin and that this accident opened up the opportunity to express her feelings, true or imaginary, it makes no difference. It just does not make sense. The accident and injury were not this disabling and, besides, the young housewife, doing all her homework and raising children must often meet problems and frustrations much more serious than this minor accident.
This is not a new subject. In order to determine whether the trial court abused its discretion in appraising Mrs. Caracci’s damages, it is necessary to review other appellate court decisions and this we have taken great pains to do. Rather than analyze the facts and awards in the many cases, we find that the opinion, of which Judge Barnette of this court was the author, in Jaeger v. Herald, La. App., 186 So.2d 365, has cited quite a number of competent authorities. In that case *514 the plaintiff suffered a mild whiplash type injury with an aggravation of a pre-exist-ing condition. The same thing can be said of a decision by Judge Hood, of the Third Circuit, in the case of Barlow v. Plummer, La.App., 195 So.2d 321. Examination of the many cases cited in these two decisions will disclose a number of similar situations apposite to this case. We are- strongly of the opinion that this plaintiff was fully recovered in September, 1963, but we must assume from the conclusions reached by Dr. Smith and Dr. Miller that plaintiff did have an aggravation of some pre-existing dormant mental condition. Giving full consideration to the situation presented by all of the facts, we believe the award of the trial court was excessive and must be reduced to $4,000.00 to Mrs. Caracci.
Complaint by appellant is made about the award of $250.00 on behalf of the two year old Gina Caracci, minor daughter of the plaintiffs, who undoubtedly suffered considerable fright but no disfiguring injuries in the accident. We think the award is generous but not grossly excessive.
The proof of property damage to the automobile of plaintiffs is not very convincing but the estimator was clearly an expert at the business and while suggestions are made that there is no proof that the damage was done in the accident by the defendant’s truck, we construe the evidence otherwise. Reference is made to Mr. Caracci’s testimony who failed to say positively when he took the pictures filed in evidence or when he sold the automobile and did not himself itemize the damages included in the estimator’s bill of repairs. There can be no question but what Mr. Caracci was trying to recite those facts. Therefore, we cannot disturb this item. Bergeron v. Roberson, 224 La. 932, 71 So.2d 332; Christian v. Martin, La.App., 38 So.2d 181.
For these reasons the judgment appealed from is amended by reducing the award to plaintiff, Mrs. Gloria Caracci, to the sum of $4,000.00, with interest. In all other respects the judgment is affirmed; costs of the appeal to be paid by plaintiffs-appel-lees.
Amended and affirmed.